In re the MARRIAGE OF Sally K.
OLAR, Petitioner,

and

Terry T. Olar, Respondent.

No. 85SC487.

Supreme Court of Colorado,
En Banc.

Dec. 21, 1987.

Fischer, Howard & Francis, Steven G. Francis, Fort Collins, for petitioner.

Terry T. Olar, pro se.

Robert T. Hinds, Jr. & Associates, P.C., Linda Daley, Littleton, Colorado Women's Bar Ass'n, Linda Christenson, Denver, for amici curiae Colorado Bar Ass'n and Colorado Women's Bar Ass'n.

VOLLACK, Justice.

The issue presented in this case is whether an educational degree constitutes marital property subject to division upon dissolution of marriage, overruling *Graham v. Graham*, 194 Colo. 429, 574 P.2d 75 (1978), or in the alternative, if an educational degree is not marital property, whether the wife was entitled to maintenance under the facts of this case, including the contributions made by the wife towards her husband's education. The court of appeals held that the trial court did not abuse its discretion by not awarding the wife maintenance, because she failed to meet the threshold requirements of need set forth in section 14–10–114(1)(a) and (b), 6B C.R.S. (1987). *In re Marriage of Olar*, No. 84CA0329 (Colo.App. Oct. 17, 1985) (not selected for publication). We affirm in part, reverse in part and remand the case for further proceedings.

I.

The petitioner, Sally K. Olar (wife), and the respondent, Terry T. Olar (husband),

were married on September 5, 1970, and separated on June 26, 1982. When the couple separated, the wife was unaware that she was pregnant with the couple's only child. By the time that the decree of dissolution was entered on December 23, 1983, the child born of the marriage was eleven months old, and the wife was an unemployed, full-time student living with her parents in Munster, Indiana. The husband was living in Copeland, Texas, earning a gross salary of $35,000 per year as a laboratory manager.

At the time of their marriage, the wife had graduated from high school and the husband was in his first year of undergraduate studies. During the twelve-year marriage, with the exception of one year in which he worked full-time, the husband was a full-time student, acquiring undergraduate and graduate degrees. For the seven years prior to their separation in June of 1982, the Olars resided in Fort Collins, Colorado, where the husband attended Colorado State University (C.S.U.). At the time of the permanent orders hearing on December 15, 1983, the husband had completed his doctoral dissertation and was only required to present his work before a dissertation committee to obtain the doctoral degree in physiology and biophysics. Throughout the marriage, the wife worked full-time, and at the time of separation she was a bookkeeper with a gross income of $1,200 per month. The wife continued her employment until June 15, 1983, with the exception of nine weeks maternity leave, until she moved to Indiana to commence her full-time studies. She moved in with her parents who provided her and the child room and board with an agreed upon value of $400 per month, which the parents advanced her as a loan to be paid back when possible.

The husband's actual educational costs were financed by a combination of veteran's benefits for his past military service, tuition waivers, student loans, fellowships, and graduate student stipends. In the late 1970's, the husband also received in excess of $8,000 as an inheritance from his father and this sum was co-mingled with the assets of the parties, some of it going for a down-payment on a mobile home in which the couple lived until their separation. Throughout their marriage, the parties acquired little in the way of marital assets. According to the wife, during the years 1979 to 1982 her income totaled $47,398 and the husband's income totaled $26,628. The marital property consisted of two motor vehicles, furniture and miscellaneous property, a mobile home worth approximately $10,000, and at the time of dissolution, a savings account containing $1,100. Both parties had debts from credit cards and the husband had student loan debts of approximately $5,400.

The wife filed for dissolution of the marriage in January of 1983 in Larimer County District Court. At the dissolution hearing, the wife claimed that she was entitled to maintenance which would represent compensation for her working full-time throughout the marriage to assist in providing almost a complete doctoral education for her husband. The wife claimed that she had an agreement with her husband whereby he would support her during her efforts to achieve a college education for herself after his education was completed. She had an expert testify as to the value of a college education for her, comparing what she could expect to earn as a high school graduate and a college graduate. The wife did not specifically argue that the husband's graduate degrees were marital property and did not offer testimony on the potential worth of his degrees if discounted to present value, or the amount that she contributed to his education.

The husband claimed that there was no formal agreement between the parties that he would finance her education. He argued that his education was not marital property under Colorado law, and that the wife was not entitled to maintenance because she was capable of supporting herself. The custody of the minor child was not at issue and was awarded to the wife subject to reasonable and liberal visitation rights for the husband.

The trial court held that the wife was not eligible for maintenance because she failed to establish the threshold of need neces-

sary to justify such an award under section 14–10–114, 6B C.R.S. (1987). The court found that the wife was capable of supporting herself and although she had a young minor child to care for, nothing suggested that the child required her mother's full-time presence at home. The trial court ordered the husband to pay to the wife $350 per month as child support. As to the marital property, the court ordered that the proceeds of the sale of the mobile home, totalling $4,914.60, and the savings account of $1,100 should be combined, and the wife should receive the sum of $5,000, with the balance going to the husband. The court noted that this was not an equal distribution, but stated that this award was in keeping with dictum contained in *Graham v. Graham*, 194 Colo. 429, 574 P.2d 75 (1978),[1] and would go towards assisting the wife in continuing her education while working part-time. The court specifically held that the education of the husband was not marital property, and for this reason, found that the student loans of the husband, likewise, were not marital obligations, and ordered that the husband assume those debts without contribution from the wife.

The wife appealed the judgment to the court of appeals, claiming that the trial court erred in denying her maintenance because she failed to satisfy a threshold requirement of need. The court of appeals affirmed the trial court, stating that "[a] trial court may use an award of maintenance as a tool to balance equities and compensate a spouse whose work has enabled the other spouse to obtain an education, so long as the spouse seeking maintenance meets the statutory threshold requirements of need set forth in § 14–10–114(1)(a) and (b), C.R.S." The court of appeals held the trial court did not abuse its discretion in finding that the wife failed to establish the requisite need.

## II.

We granted certiorari to reconsider our decision in *Graham v. Graham*, 194 Colo. 429, 574 P.2d 75 (1978), which held that an educational degree is not marital property. This reconsideration is based upon the recognition of the harsh and often unfair outcome in a dissolution proceeding where one spouse has postponed his or her own career and educational goals to support and contribute to the career and educational goals of the other spouse. The pursuit of advanced educational degrees and professional training often results in a deferral of earning capacity by the spouse who receives that educational degree or advanced training at the expense of the current standard of living of the couple. When a couple collectively works towards the attainment of an advanced educational degree or career goal, there is an expectation of a higher standard of living in the future. If a dissolution of the marriage occurs just as the graduate degree is attained, or the career goal achieved, or just subsequent to the attainment of the goal, the spouse that contributed to and supported the other spouse has his or her expectations of the higher standard of living frustrated, and as a result of the collective sacrifice and deferment of acquiring other possessions, is left in a position where there is little marital property to divide. The contributions to the other spouse's education or career goals are often made at the expense of the supporting spouse's own education or career goal. The supporting spouse is left without the resources to recover from the years of deferring the acquisition of property and security. It is with the recognition of this potential for injustice that we examine the status of an educational degree in the context of the dissolution of a marriage.

In considering the status of an educational degree in the dissolution of a marriage, we do not work on a clean slate. In *Graham v. Graham*, 194 Colo. 429, 574 P.2d 75 (1978), we held that an educational degree is not marital property within the meaning of section 14–10–113(2), 6B C.R.S. (1987), which states that "[f]or purposes of this

---

1. In *Graham,* we stated that the contribution of a spouse to the education of the other spouse could be taken into consideration by the court when dividing marital property. 194 Colo. at 433, 574 P.2d at 78.

article only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:"

(a) Property acquired by gift, bequest, devise, or descent;

(b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation; and

(d) Property excluded by valid agreement of the parties.

In applying this definition to an educational degree, we have stated:

An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

*Graham,* 194 Colo. at 432, 574 P.2d at 77.

Our position in *Graham* is followed by the majority of jurisdictions to address this issue. *E.g., Nelson v. Nelson,* 736 P.2d 1145 (Alaska 1987); *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (App.1981); *In re Marriage of Sullivan,* 134 Cal.App.3d 634, 184 Cal.Rptr. 796 (1982); *vacated,* 37 Cal. 3d 762, 209 Cal.Rptr. 354, 691 P.2d 1020 (1984) (statute amended to provide for the community to be reimbursed for community contributions to education of a party); *Hughes v. Hughes,* 438 So.2d 146 (Fla.App. 1983); *In re Marriage of Weinstein,* 128 Ill.App.3d 234, 83 Ill.Dec. 425, 470 N.E.2d 551 (1984); *Archer v. Archer,* 303 Md. 347, 493 A.2d 1074 (1985); *Drapek v. Drapek,* 399 Mass. 240, 503 N.E.2d 946 (1987); *Ru-*

*ben v. Ruben,* 123 N.H. 358, 461 A.2d 733 (1983); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Hodge v. Hodge,* 513 Pa. 264, 520 A.2d 15 (1986); *Wehrkamp v. Wehrkamp,* 357 N.W.2d 264 (S.D.1984); *Petersen v. Petersen,* 737 P.2d 237 (Utah App.1987). *Contra, O'Brien v. O'Brien,* 66 N.Y.2d 576, 498 N.Y.S.2d 743, 489 N.E. 2d 712 (1985).[2]

The doctrine of stare decisis imposes upon us a duty to exercise extreme care in overruling settled law. *Creacy v. Industrial Comm'n,* 148 Colo. 429, 366 P.2d 384 (1961). On the other hand, "[a] rule directed to the disposition of property in a dissolution proceeding can only be as sound as the economic reality which it attempts to service." *In re Marriage of Grubb,* 745 P.2d 661, 664 (Colo.1987). In *Grubb,* we reconsidered the status of pension plans as marital property and found that our prior case law, which rejected the concept of pension plans as marital property, did not adequately account for the true nature of retirement plans. We recognized that retirement benefits were a form of deferred compensation for consideration for past services performed by an employee and constituted part of the compensation earned by the employee. *Id.* at 664. Educational degrees are very different in nature from pension plans. While a pension plan is difficult to place a value upon, it is possible. We find that the value of an educational degree is too dependent upon the attributes and future choices of its possessor to be fairly valued.

■ Other courts have noted the difference between professional licenses or degrees and vested but unmatured pension plans. The Maryland Court of Appeals noted that while pension rights constitute a current asset which the individual has a contractual right to receive, the future en-

---

**2.** The *O'Brien* decision is based on portions of the New York Equitable Distribution Law which provides that a court consider the efforts one spouse has made to the other spouse's career. *See* N.Y.Dom.Rel.Law § 236(B)(5) (McKinney 19___). The analysis in *O'Brien* is illustrative of the equitable concerns of the working spouse who contributes to the other spouse's career, however, it has a limited application beyond New York.

One commentator also argues that a spouse's professional degree and license should be considered a career asset to be divided, and provides a clear picture of the surprising injustice which resulted from the institution of the no-fault divorce law in the United States. L. Weitzman, *The Divorce Revolution* 124–29 (1985).

hanced income resulting from a professional degree is a "mere expectancy." *Archer v. Archer*, 493 A.2d at 1079, citing *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981) (case holding a vested but unmatured pension right is marital property). The New Jersey Supreme Court stated that "[a] professional license or degree represents the opportunity to obtain an amount of money only upon the occurrence of highly uncertain future events. By contrast, the vested but unmatured pension at issue in *Kikkert [v. Kikkert*, 88 N.J. 4, 438 A.2d 317 (N.J.1981)], entitled the owner to a definite amount of money at a certain future date." *Mahoney*, 453 A.2d at 531. The *Mahoney* court further stated that "[v]aluing a professional degree in the hands of any particular individual at the start of his or her career would involve a gamut of calculations that reduces to little more than guesswork." *Id.* at 532. We agree with this analysis, and therefore reaffirm our holding in *Graham*, holding that an educational degree is not marital property.

In *Graham* we stated, "[a] spouse who provides financial support while the other spouse acquires an education is not without a remedy." 194 Colo. at 433, 574 P.2d at 78. Here, it is the adequacy of the remedy with which we are concerned. The contribution of one spouse to the education of the other spouse may be taken into consideration when marital property is divided. *Id.*, citing *Greer v. Greer*, 32 Colo. App. 196, 510 P.2d 905 (1973). This remedy is effective only if sufficient marital property has been accumulated by the parties during their marriage. In *Graham*, and the case at bar, the parties were divorced shortly after the husband acquired his degree. The situation in which the dissolution of marriage occurs before the benefits of the advanced degree can be realized, and where no marital property is accumulated, requires us to look to another remedy for the inequity that results for the working spouse. Another option mentioned in *Graham* was an award of maintenance as a need is demonstrated. The trial court could make an award of maintenance based on all relevant factors including the contri-

bution of one spouse to the education of the other spouse. *Id.* For this remedy, we look to section 14–10–114, 6B C.R.S. (1987), which sets forth the standards for awarding maintenance.

### III.

Under Colorado's maintenance statute, maintenance is available only if property is insufficient to provide for the financial needs of the spouse. *In re Marriage of Jones*, 627 P.2d 248 (Colo.1981). In this case, the accumulated marital property was insufficient to fairly compensate the wife for her contributions and expectations in the husband's educational degree. However, the trial court determined that the wife was not entitled to maintenance because she was capable of supporting herself, and therefore failed to establish "the threshold necessary to justify an award of maintenance." In our view, the trial court's holding does not adequately address the unfairness which results when one spouse sacrifices his or her own educational goals to support his or her spouse. Such an interpretation is not required by section 14–10–114, 6B C.R.S. (1987). Subsection (1) provides that a court may grant maintenance to either spouse if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Once the court deems it just to award a spouse maintenance, the court considers all relevant factors including: the financial resources of the party seeking maintenance; the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment and that party's future earning capacity; the standard of living established during the marriage; the duration of the marriage; the age and condition of the spouse seeking maintenance; and the abili-

ty of the spouse paying maintenance to meet his or her needs. § 14–10–114(2), 6B C.R.S. (1987). In consideration of whether to award maintenance, the trial court applies a two-part test evidenced by the statute. First, the trial court must determine whether a spouse is entitled to maintenance under section 14–10–114(1). Second, the trial court determines the amount of maintenance to be awarded once entitlement has been established. In setting the amount of maintenance, the trial court considers various factors including the standard of living established during the marriage.

As interpreted by the trial court, the threshold of need required by section 14–10–114(1), evidenced by the requirement that the spouse seeking maintenance have insufficient property to provide for his "reasonable needs" and be "unable to support himself through appropriate employment," is a high threshold requiring a spouse to establish that he or she lacks the minimum resources to sustain human life. The phrases "reasonable needs" and "appropriate employment" need not be viewed so narrowly.

In *Graham*, we stated that one of the remedies available to the working spouse, where no marital property was accumulated, is an award of maintenance if "a need is demonstrated." 194 Colo. at 433, 574 P.2d at 78. In *In re the Marriage of McVey*, 641 P.2d 300, 301 (Colo.App.1981), the court of appeals stated that "a trial court may use an award of maintenance *as a tool to balance equities and compensate a spouse whose work has enabled the other spouse to obtain an education;* however, this tool is available for use only where the spouse seeking maintenance meets the statutory threshold requirements of need." (Emphasis added). This "threshold of need" was not defined in *McVey*, but appears to have incorporated the concept of the minimum

requirements to sustain life. This interpretation does not give sufficient weight to the word "reasonable" contained in the phrase "reasonable needs." [3] The determination of what a spouse's "reasonable needs" are, is dependent upon the particular facts and circumstances of the parties' marriage. *See Moss v. Moss,* 190 Colo. 491, 549 P.2d 404 (1976) (in the award of alimony, each case depends on its own particular facts and circumstances and an award of alimony in gross is not unacceptable per se).

■ The second factor to be considered in deciding whether a spouse is entitled to maintenance is whether the spouse is able to find "appropriate employment" for his or her support. § 14–10–114(1)(b). In the interest of fairness, the determination of what constitutes "appropriate employment" under subsection (b) requires that the party's economic circumstances and reasonable expectations established during the marriage be considered. In *In re Marriage of Angerman,* 44 Colo.App. 298, 612 P.2d 1166 (1980), the court of appeals affirmed the award of maintenance to the wife in the sum of $200 per month while the wife was matriculating in a master's degree program for music. The trial court found that the parties had intended that "appropriate employment" for the wife meant a career in opera or in the teaching of music, and that the wife's employment as a keypunch operator was only a temporary position "dictated by the financial needs of the husband's education." *Id.* 612 P.2d at 1167.

■ The word "appropriate" is defined as "specially suitable" or "proper." Webster's Third New International Dictionary 106 (1969). The word "appropriate" limits the otherwise harsh results of denying a spouse maintenance if any kind of employment is attainable. The employment must be suited to the individual, including that

---

**3.** The Utah Court of Appeals noted the rigidity of the interpretation of the "reasonable needs" requirement of section 14–10–114, noting that in cases such as *Graham,* "where divorce occurs shortly after the degree is obtained, traditional alimony analysis would often work hardship because, while both spouses have modest incomes at the time of divorce, the one is on the threshold of a significant increase in earnings.

Moreover, the spouse who sacrificed so the other could attain a degree is precluded from enjoying the anticipated dividends the degree will ordinarily provide.... In such cases, alimony analysis must become more creative to achieve fairness, and an award of 'rehabilitative' or 'reimbursement' alimony, not terminable upon remarriage, may be appropriate." *Petersen v. Petersen,* 737 P.2d at 242 n. 4.

individual's expectations and intentions as expressed during the marriage. The consideration of the parties' reasonable expectations and intentions gives full meaning to the phrase "appropriate employment." Any statement or intimation to the contrary in our prior decision in *Graham* and contained in the court of appeals' decision of *McVey* is hereby expressly disapproved. We think it appropriate for the trial court to reconsider the award of maintenance.[4]

Accordingly, we affirm the court of appeals' holding that an educational degree was not marital property, but reverse the judgment and remand the case to the court of appeals with directions to return the case to the district court for further proceedings as to the issue of maintenance.

---

**4.** Other courts have considered the problem of how to fairly compensate a working spouse who has supported the other spouse while he or she obtains a professional degree. One jurisdiction has created what is known as "reimbursement alimony" which awards maintenance to the supporting spouse in an amount to equal the money spent by the supporting spouse towards the education. *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982). Another court held that the supporting spouse was entitled to restitution of the money spent towards the attainment of the other spouse's degree in order to prevent unjust enrichment of the student- spouse. *See Hubbard v. Hubbard,* 603 P.2d 747 (Okla.1979). We recognize that our approach to compensat-

ing a spouse for his or her support of the other spouse in the attainment of an educational degree is to a certain extent limited by the statutory framework contained in the Uniform Dissolution of a Marriage Act. Other courts, interpreting their own statutory provisions regarding maintenance, have held that a demonstrated capacity of self-support on the part of the supporting spouse is but one factor to be considered in the awarding of maintenance, recognizing that a spouse who is capable of supporting someone through school will in most cases be capable of supporting him or herself after the marriage is dissolved. *See Washburn v. Washburn,* 101 Wash.2d 168, 677 P.2d 152 (1984).