In re the **MARRIAGE OF Kathleen J. RENIER, Appellant,**

and

**James H. Renier, Appellee.**

**No. 92CA0120.**

Colorado Court of Appeals, Div. V.

May 6, 1993.

Ronald B. Vaughan, Fort Collins, Carol A. Serelson, Cheyenne, WY, for appellant.

Wood, Herzog, Osborn & Bloom, P.C., Charles S. Bloom, Jennifer J. Stocker, Fort Collins, for appellee.

Opinion by Judge TAUBMAN.

In this dissolution of marriage action, Kathleen J. Renier (wife) appeals the judgment for property division, maintenance, and attorney fees. We reverse and remand for further proceedings.

Wife and James H. Renier (husband) were married in 1986 and had one child. The marriage was dissolved in 1991.

I.

Wife first contends that the trial court erred in determining the number of stock shares and options which were marital property. Specifically, she contends that the court improperly calculated the parties' marital property without requiring hus-

band to trace his ownership of stocks and options he owned at the time of the marriage and without properly classifying particular stock shares and options as marital or separate property. We agree.

Husband owned 1,534 shares of stock in his employer's company at the time of the marriage. Husband gained an additional 1,534 shares from a 1986 stock split after the marriage.

Husband also owned 2,750 stock options in his employer's company at the time of the marriage. As a result of the same stock split, the options became options for 5,500 shares of stock in 1986. It is undisputed that the parties used marital funds to exercise these 5,500 options during the marriage. It is also undisputed that additional shares of stock in the same company were bought and sold during the marriage.

## A.

In support of the trial court's judgment, husband contends that both the original 1,534 shares and the additional 1,534 shares gained from the 1986 stock split were his separate property. We agree with husband in part.

■ Husband testified that he still had certificates for the original 1,534 shares solely in his name at the time of the dissolution. Therefore, contrary to wife's contention, those shares were properly considered his separate property, except to the extent the shares appreciated in value during the marriage. *See* § 14–10–113(4), C.R.S. (1987 Repl.Vol. 6B); *In Re Marriage of Wildin*, 39 Colo.App. 189, 563 P.2d 384 (1977).

■ According to husband, his 1,534 shares gained from the 1986 stock split were also his separate property, since they were in effect property "acquired in exchange for property acquired prior to the marriage...." Section 14–10–113(2)(b), C.R.S. (1987 Repl.Vol. 6B). Here, when husband's stocks underwent a two for one split, he was able to transmute his 1,534 shares into 3,068 shares.

A stock split does not increase the shareholder's ownership rights in a corporation. *See In re Marriage of Smith*, 86 Ill.2d 518, 56 Ill.Dec. 693, 427 N.E.2d 1239 (1981). Thus, apart from the issue of appreciation in value during the marriage, the additional 1,534 shares potentially could be classified as husband's separate property.

However, to retain its separate character, premarital property must be traceable to specific assets. *In re Marriage of Stedman*, 632 P.2d 1048 (Colo.App.1981).

Here, husband did not trace the additional 1,534 shares to the original 1,534 shares he owned at the time of the marriage. Rather, he combined those shares with other shares acquired during the marriage and many of the combined shares were sold. Contending that it was unnecessary for him to trace the shares received in the stock split to the shares remaining as of the date of the hearing, husband presented no evidence to demonstrate which of the shares still remained.

In the absence of evidence tracing these shares, we conclude that the additional 1,534 shares obtained through the stock split after the marriage should not have been set apart to husband as his separate property.

## B.

We turn now to consideration of husband's 2,750 options owned at the time of the marriage.

Although husband concedes that the 1981 options were exercised during the marriage, he contends that the trial court properly determined that the 5,500 shares obtained by their exercise remained his separate property. We disagree.

■ First, he asserts that since certificates for those stocks were issued in his name alone, the stocks were his separate property. However, this is not determinative.

Section 14–10–113(3), C.R.S. (1987 Repl. Vol. 6B) establishes a presumption that all property acquired by either spouse subsequent to the marriage is marital, "regardless of whether title is held individually or by the spouses in some form of co-owner-

ship...." Thus, that the stock certificates were in his name alone is not dispositive.

■ Second, husband maintains that since the 1981 options were his separate property, the stocks acquired by exercise of the options necessarily remained his separate property. However, the record reveals it to be undisputed that husband used marital funds to exercise the 1981 options.

Stated otherwise, husband did not show that he used his separate property, such as money he received from an inheritance, to exercise the options. Had he done so, husband might have been able to establish that the stocks acquired through the exercise of the 1981 options had retained their character as his separate property. In the absence of such evidence, it is presumed that these 5,500 shares of stock were marital property.

On remand, the trial court is directed to reconsider the division of the shares, first setting apart to husband the premarital value of his 1,534 shares owned at the time of the marriage and then equitably distributing the marital increase in value of those shares and the remaining shares and options. The trial court may consider the parties' respective economic circumstances at the time of any hearing on remand for the purpose of equitably dividing the property. *See In re Marriage of Wells*, 850 P.2d 694 (Colo. No. 92SC113 April 12, 1993).

## II.

We do not address wife's arguments, raised for the first time on appeal, that 4,000 shares sold during the marriage and 962 shares held in trust for husband's child from a previous marriage should also be deemed marital property. *See First National Bank v. Union Tavern Corp.*, 794 P.2d 261 (Colo.App.1990).

## III.

■ Wife next contends that the trial court abused its discretion in failing to award maintenance and attorney fees to her. We agree that the issues must be reconsidered on remand.

Awards of property, maintenance, and attorney fees are interrelated. Because the order for property division has been reversed, the issues of maintenance and attorney fees must be reconsidered as well. *See In re Marriage of Jones*, 627 P.2d 248 (Colo.1981). In this regard, the record reveals certain ambiguities that will need to be addressed on remand.

■ In determining whether to award maintenance, the district court must first determine whether a spouse is entitled to maintenance under § 14–10–114(1), C.R.S. (1987 Repl.Vol. 6B), and, if so, then must determine the amount and duration of such maintenance. *In re Marriage of Olar*, 747 P.2d 676 (Colo.1987).

Here, the court concluded wife was capable of supporting herself, based on the award to her of "approximately $100,000," even though most of those assets were not liquid, and also "given her earning capacity as demonstrated in the past." The court stated, "This is not a case where she put [her educational] goals aside because of the marriage thereby making it incumbent on [husband] to provide that education." Based on this analysis, it extended wife's award of $2,000 per month temporary maintenance for four months, apparently relying on § 14–10–108(5)(c), C.R.S. (1987 Repl.Vol. 6B).

■ In determining whether to award maintenance, the court must make a threshold determination that the spouse requesting it lacks sufficient property, including marital property, to provide for her reasonable needs and is unable to support herself through appropriate employment. *See In re Marriage of Olar, supra*.

We cannot tell from the district court's order whether it made a threshold determination that wife was not entitled to an award of maintenance as set forth in *Olar*. Accordingly, on remand, the district court should clarify its findings and determine specifically whether wife meets the threshold test for an award of maintenance. If the district court finds that she does, it should consider all relevant factors under § 14–10–114(2), C.R.S. (1987 Repl.Vol. 6B)

to determine the amount and duration of maintenance. *See In re Marriage of Olar, supra.*

▮ As to attorney fees, the trial court has broad discretion in awarding attorney fees after considering the parties' financial resources. Section 14–10–119, C.R.S. (1987 Repl.Vol. 6B). If there is a wide disparity in the parties' earning capacities, an award is permissible. *In re Marriage of DaFoe,* 677 P.2d 426 (Colo.App. 1983). The purpose of an award is to apportion equitably the costs of dissolution, based on the current resources of the parties. *In re Marriage of Aldinger,* 813 P.2d 836 (Colo.App.1991).

Here, at the time of permanent orders, wife was unemployed, enrolled in school, recovering from surgery, and caring for the parties' two year-old child and two children from a prior marriage. Her only income was $600 per month child support for her children from the prior marriage and $742 per month child support for her child of this marriage. The trial court found that husband's monthly income was $7,450; however, his average adjusted gross income, as reported in his income tax returns for 1986 through 1990, was approximately $10,170 per month. Under these circumstances, on remand, the trial court should reconsider whether to award attorney fees in light of husband's income and the other factors noted above.

The judgment is reversed, and the cause is remanded for reconsideration and new orders for distribution of property, maintenance, and, based upon its exercise of discretion, attorney fees, consistent with the views expressed in this opinion.

RULAND and BRIGGS, JJ., concur.