24CA1962 Marriage of Herzik 03-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1962
El Paso County District Court No. 23DR32240
Honorable Amanda Philipps, Judge

In re the Marriage of

Shannon Renee Herzik,

Appellee,

and

Brian Louis Herzik,

Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

Law Office of Joel M Pratt, Joel M Pratt, Colorado Springs, Colorado, for
Appellee

Graham Law PC, Tahli Ann Delgado, Colorado Springs, Colorado, for Appellant

¶ 1     In this dissolution of marriage proceeding, Brian Louis Herzik (husband) appeals the trial court's order awarding maintenance to Shannon Renee Herzik (wife).  We affirm and remand the case to the trial court for a determination of appellate attorney fees.

## I.     Background

¶ 2     The parties married in 1997 and filed for divorce in December 2023.  Husband was in the Army; while married, the parties frequently moved within the United States and internationally for his job.  During the marriage, wife initially taught English and was earning credits toward a master's degree but stopped working full-time and ended her studies to focus on building a family.  The parties had one child, who was almost seventeen years old at the time the dissolution decree entered.

¶ 3     At the time of the permanent orders hearing, husband had retired from the military and had become a contractor.  He earned a monthly pension and disability payment from the Army, in addition to his contractor salary of $137,500 per year.  During the litigation, at husband's request, wife completed a vocational evaluation.  Husband's evaluator opined that wife could earn an annual salary of between $49,466 and $53,210.  By the permanent orders

hearing, wife was about to begin a full-time position as an elementary school media specialist, earning $62,488 per year. In addition, she reported freelance cataloguing earnings of $25 per hour; on her sworn financial statement executed shortly before the hearing, she reported earning approximately $5,000 per year from this freelance work.

¶ 4	The parties reached a partial separation agreement, which was adopted by the court as part of the permanent orders. As relevant here, according to that agreement

- husband kept the marital home, and, in exchange, wife received $120,000;

- wife retained ownership of one vehicle, one checking and two savings accounts, six investment accounts, and an IRA; and

- wife received half of husband's military pension and teaching retirement benefits, including his PERA benefits.

¶ 5	After a hearing on the remaining issues, which included wife's request for maintenance, the court awarded wife $1,300 per month in maintenance for twelve years.

## II. Standard of Review and Legal Framework

¶ 6 The trial court has broad discretion in deciding the amount and duration of a maintenance award, and, absent an abuse of that discretion, its decision won't be reversed. *See* § 14-10-114(2), (3)(e), C.R.S. 2025; *In re Marriage of Wright*, 2020 COA 11 ¶ 15; *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14. We review de novo whether the court applied the proper legal standard. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12.

¶ 7 A trial court's decision to award maintenance generally requires the court to follow a three-step process. *See Wright*, ¶¶ 14-16 (discussing the three-step framework set forth in section 14-10-114(3)). The first step requires the court to make "written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the reasonable financial need as established during the marriage, and the taxability of the maintenance awarded." *In re Marriage of Herold*, 2021 COA 16, ¶ 25 (first citing § 14-10-114(3)(a)(I); and then citing *Wright*, ¶ 14).

¶ 8 At the outset of step two, the court must determine and consider the "guideline amount and term of maintenance." § 14-10-

114(3)(a)(II)(A).  The guideline amount and term of maintenance are based on the parties' combined gross income, the parties' relative gross incomes, and the duration of the marriage.  § 14-10-114(3)(b).  But when the parties' combined gross income exceeds $240,000 per year (or $20,000 per month) — as it did here — the three-step process discussed and applied in *Wright* is short-circuited.  Under these circumstances, the requirement that the court calculate "the advisory guideline amount of maintenance does not apply, and the court shall instead consider the factors set forth in subsection (3)(c) of [section 14-10-114] in determining the amount of maintenance."  § 14-10-114(3.5); *see also* § 14-10-114(3)(c) (setting forth a nonexhaustive list of factors a court should consider in fashioning a maintenance award).  The factors listed in section 14-10-114(3)(c) aren't exclusive, so "[t]he court has discretion to determine the award of maintenance that is fair and equitable to both parties based upon the totality of the circumstances."  *Wright,* ¶¶ 15-16 (citation omitted).

¶ 9     Finally, the court must find that the party seeking maintenance lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs and is

4

unable to support themselves through appropriate employment. § 14-10-114(3)(a)(II)(C), (3)(d); *see also Wright*, ¶¶ 16-17 ("[T]he legislature has instructed the trial court to consider this arguably threshold inquiry last . . . .").

### III. Wife's Income, Reasonable Needs, and Appropriate Employment

¶ 10     Husband first contends that the trial court abused its discretion when it awarded maintenance to wife (1) without properly determining her gross income pursuant to section 14-10-114(3)(a)(I); (2) after improperly assessing both parties' financial circumstances; and (3) without finding that wife had insufficient property to provide for her reasonable needs or that she couldn't support herself through appropriate employment. We disagree that the court reversibly erred.

### A. Wife's Income

¶ 11     The court found wife's gross monthly income to be $8,370. It reached this figure by adding together her monthly salary of $5,205 from her full-time employment as an elementary school media specialist and half of husband's military retirement, which the court calculated to be $3,163 (and then rounding up by $2). The court,

5

however, excluded from the calculation of wife's gross monthly income any earnings from her freelance cataloging work, characterizing that work as "voluntary overtime" in addition to her full-time employment. Husband contends that the court erred in two respects when calculating wife's gross income: (1) it erred in calculating her half of his military retirement, and (2) it erred by excluding her cataloging work earnings from her gross income.

¶ 12 We reject husband's first contention that the court should have found wife's half of his military pension benefits to be $3,383 per month. The record shows that husband's monthly pension amount of $6,767 was reduced by $440 to pay for survivor benefit costs. Therefore, each party is allocated half of $6,327 per month, or $3,163.50 each. Accordingly, the court — which used $3,163 per month — didn't err in this calculation.

¶ 13 But we agree with husband's second contention that the court erred by excluding wife's cataloguing earnings from its calculation of her gross income. Section 14-10-114(8)(c)(I) and (II) set forth various categories of earnings that are included (subparagraph (I)) and excluded (subparagraph (II)) from the definition of gross income for the purpose of determining maintenance. Citing section 14-10-

114(8)(c)(II)(C), wife argues that the court properly excluded her cataloging earnings because that income was in addition to her earnings from full-time employment. Wife, however, reads section 14-10-114(8)(c)(II)(C) too broadly. That section excludes from the definition of gross income earnings that are "from additional jobs that result in the employment *of the obligor* more than forty hours per week or more than what would otherwise be considered to be full-time employment." *Id.* (emphasis added). But wife, as the party awarded maintenance, is the *obligee*; husband is the obligor. Thus, we conclude that the trial court erred by excluding the earnings from this additional work from wife's gross monthly income.

¶ 14    But we only reverse if the error affects a party's substantial rights. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."). We conclude this error didn't, for two reasons. First, at most, the record supports that wife earned $5,000 per year (or approximately $417 per month) for her cataloging work. Thus, the court should have used a figure of approximately $8,787 per month for wife. This is less than a 5% discrepancy from the figure the court used. *Cf. In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001) ("If . . . a

7

trial court's error affects only a small percentage of the overall marital estate, such an error may be deemed to have been harmless and thus does not require reversal.").

¶ 15    Second, because the parties' combined gross monthly income exceeded $20,000 per month, regardless of whether the court included wife's earnings from cataloging work,[1] the court wasn't required to calculate guideline maintenance. *See* § 14-10-114(3.5). So we can't even say that this minor discrepancy in wife's gross monthly income impacted the court's calculation of maintenance.

¶ 16    Simply put, although the court erred in excluding the earnings from wife's cataloging work in calculating her gross monthly income, that error was harmless, so it doesn't provide a basis for reversing the court's order.

---

[1] The court found husband's gross monthly income to be $17,407 and wife's income to be $8,370 without the cataloging income or $8,787 with it. Thus, the parties' combined gross monthly income was either $25,777 or $26,194, both of which exceed the $20,000 upper limit that renders inapplicable the requirement that the court calculate guideline maintenance. *See* § 14-10-114(3.5), C.R.S. 2025 (If the parties combined gross income exceeds $20,00 per month, "the calculation methodology . . . for determining the advisory guideline amount of maintenance does not apply.").

## B. Parties' Financial Circumstances

¶ 17    The court found husband's financial resources would continue to be greater than wife's throughout their careers, "[e]ven if wife continue[d] to expand her education and degrees." Thus, the court properly considered the parties' economic circumstances, and the record supports its factual findings.

¶ 18    While husband correctly points out that a maintenance award must be based upon the parties' needs and circumstances at the time of the hearing, rather than upon past or future conditions, *see In re Marriage of Simon*, 856 P.2d 47, 51-52 (Colo. App. 1993), the court is also obligated to consider both parties "employability, obtainable through reasonable diligence and additional training or education," § 14-10-114(3)(c)(V).

¶ 19    The court considered husband's monthly income of $17,407 — which was comprised of his salary, his portion of his military pension, and his monthly military disability payment. The court also considered wife's monthly income of $8,370 from both her media specialist position and her portion of husband's military pension. The court also considered that wife had "potential additional work . . . as a cataloger," "if she cho[se] to take on this

additional work." The court further found, as supported by the vocational evaluation report, that even if wife earned future degrees, wife would still "have less earning potential" than husband throughout her career. Because the court applied the proper statutory framework and the record supports its factual findings, we perceive no abuse of discretion. To the extent that the record also contains evidence suggesting that husband's income could decrease, it's the trial court's responsibility to judge the credibility of witnesses and resolve conflicting evidence. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.

C.    Wife's Reasonable Needs and Appropriate Employment

¶ 20    The record demonstrates that when the court fashioned its maintenance award, it considered wife's reasonable needs as established during the marriage, as it was required to do. *See Herold*, ¶ 17 (the court is not limited to satisfying a spouse's basic or survival needs); *see also In re Marriage of Olar*, 747 P.2d 676, 681 (Colo. 1987) ("reasonable needs" has been liberally construed and depends on the particular circumstances of the marriage). The court considered that while, during the marriage, wife owned a home, she lacked the credit history necessary to purchase a home

on her own and would instead have to pay rent. The court also considered that while husband previously saved for the couple's retirement and emergency needs, wife must now independently save for these things. And the court noted that wife's older model car "may need additional maintenance and repairs." Moreover, to the extent that husband suggests that wife's equalization payment of $120,000 obviated her maintenance request, a spouse isn't required to deplete their share of the marital property to be entitled to maintenance. *See In re Marriage of Bartolo*, 971 P.2d 699, 702 (Colo. App. 1998).

¶ 21 Similarly, the record shows that the court considered wife's appropriate employment when it determined maintenance. The determination of "appropriate employment" requires the consideration of "the party's economic circumstances and reasonable expectations established during the marriage." *Olar*, 747 P.2d at 681. The court considered that, during the marriage, wife sometimes worked part-time to allow her to care for the parties' child, and she managed the couple's finances. To the extent that the record contains conflicting evidence about whether the parties discussed wife's return to work after the child became school aged,

the trial court apparently credited wife's evidence that they didn't. *See B.R.D.*, ¶ 15. The court considered that wife became employed, with a salary exceeding husband's vocational expert's estimate of her earning capacity but nevertheless found that she lacked sufficient income to meet her reasonable needs.

¶ 22 Given this record, which supports the court's consideration of both wife's reasonable needs and her appropriate employment, the court didn't abuse its discretion in awarding wife maintenance.

## IV. Adequate Findings

¶ 23 Husband next contends that the trial court made inadequate findings to support the maintenance award. Specifically, husband argues first that the court didn't make the required findings pursuant to section 14-10-114(3)(a)(I)(A) and (D), 14-10-114(3)(a)(II)(B), or 14-10-114(3)(d). We disagree.

### A. Standard of Review and Relevant Law

¶ 24 We review de novo the adequacy of the court's findings. *People v. Shifrin*, 2014 COA 14, ¶ 90. Indeed, "the adequacy of a trial court's findings, as contrasted with the sufficiency of the evidence to support them, is tested by whether an appellate court can discern the lower court's rationale." *Id.*

¶ 25     A trial court's findings are adequate when the court's order contains findings of fact and conclusions of law sufficient to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it reached its decision. *In re Marriage of Van Inwegen*, 757 P.2d 1118, 1121 (Colo. App. 1988). We consider the trial court's findings and rulings from the bench as a supplement to its written order. *Friends of Denv. Parks, Inc. v. City & County of Denver*, 2013 COA 177, ¶¶ 34-37.

¶ 26     As noted above, pursuant to section 14-10-114(3)(a)(I), the court must first make written or oral findings on five specific issues, including, as relevant to husband's challenge, each party's gross income and their reasonable financial needs as established during the marriage. *See* 14-10-114(3)(a)(I)(A), (D); *Herold*, ¶ 25; *Wright*, ¶ 14. The findings pursuant to section 14-10-114(3)(d) have been characterized as "required" and "essential." *Wright*, ¶ 16.

¶ 27     However, with respect to the findings pursuant to section 14-10-114(3)(c), "a district court has no obligation to make specific factual findings on every factor listed in [that] section." *Wright*, ¶ 20. Instead, a court must make findings of fact and conclusions

of law "sufficiently explicit . . . to give the appellate court a clear understanding of the basis of its order." *Id.* (quoting *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9); *see also In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised.").

## B. Analysis

¶ 28 Husband doesn't challenge that the court made income findings pursuant to section 14-10-114(3)(a)(I)(A). Instead, husband disputes the accuracy of the court's gross income determination for wife. As we discussed above, though the court erred in determining wife's income by excluding her cataloguing earnings, that error was harmless.

¶ 29 And while husband contends that the court didn't make sufficient findings regarding the parties' reasonable financial needs as established during the marriage, as required by section 14-10-114(3)(a)(I)(D), the record shows that the court did. Indeed, the court explicitly considered the reasonable needs of the parties to include their respective needs for a stable home and the ability to

save for retirement. As we discussed above, the court accounted for these needs when determining wife's maintenance amount.

¶ 30 With regard to section 14-10-114(3)(a)(II)(B), which requires the court to consider the factors listed in 14-10-114(3)(c) — specifically, that the court consider wife's ability to meet her needs independently pursuant to section 14-10-114(3)(c)(I) — the record shows the court did just that. The court considered wife's income and her need to shoulder new financial burdens such as rent, retirement savings, and saving for emergencies.

¶ 31 Husband also suggests that there was "little analysis" as to his ability to meet his reasonable needs while paying maintenance as required by section 14-10-114(3)(c)(II). But the record shows that the court considered husband's high voluntary contributions to his own retirement savings, as well as his unnecessarily high loan payments related to wife's equity payout, when it concluded that husband should be able to pay $1,300 in monthly maintenance while earning an income of "well over $17,000 a month." Because this record provides the bases for the court's order, its findings are sufficient.

15

¶ 32    Finally, the court made sufficient findings pursuant to section 14-10-114(3)(d), which requires the court to make findings that the party seeking maintenance lacks sufficient property to provide for their reasonable needs and is unable to support themselves through appropriate employment.  Other divisions of this court — for example, in *Wright*, ¶ 16, and *In re Marriage of Stradtmann*, 2021 COA 145, ¶ 31 — have suggested that a specifically worded finding regarding section 14-10-114(3)(d) isn't required.  The division in *Wright* was primarily concerned with reviewing the correct order of application for section 14-10-114(3)(a), (3)(c), and (3)(d) — something not challenged here.  In *Wright*, it wasn't the court's general finding pursuant to subsection (3)(d) that the wife "ha[d] a need for spousal maintenance" that necessitated reversal, but rather the fact that the court entered this finding before making other necessary findings.  *Wright*, ¶¶ 11, 18, 22.  Similarly, relying on *Wright*, the division in *Stradtmann* noted that subsection (3)(d) findings are "required" but focused on the court's failure to "make *any* findings on" federal tax implications pursuant to subsection (3)(a), implying that more general findings under subsection (3)(a) or (3)(d) may be acceptable.  *Stradtmann*, ¶ 33 (emphasis added).

¶ 33 Here, while the court didn't specifically state that maintenance was required to satisfy wife's reasonable needs even after appropriate employment, its ruling supports this conclusion. After considering the factors from subsections (3)(a), (3)(b), and (3)(c), the court concluded that wife "lack[ed] sufficient . . . income . . . and [wa]s in need of maintenance."

¶ 34 Given this record, which provides the bases for the court's ruling, we conclude that the trial court's findings and order were adequate.

## V. Insufficient Evidence

¶ 35 Lastly, husband contends that the evidence is insufficient to support granting wife maintenance. "Claims regarding the sufficiency of the evidence are mixed questions of law and fact." *In re Estate of Owens*, 2017 COA 53, ¶ 19. "[W]e defer to a trial court's factual findings unless they are so clearly erroneous as to find no support in the record." *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24. We review de novo issues of law. *In re Marriage of Young*, 2021 COA 96, ¶ 9. We have already discussed how the record supports the court's findings regarding wife's need for maintenance. As we have shown, the court properly considered

17

wife's reasonable needs and the appropriateness of her employment, as well as husband's ability to pay, before ordering maintenance, and its determinations are supported by the record.

## VI.   Wife Requests Attorney Fees

¶ 36    Wife requests that we award her attorney fees incurred on appeal.  As grounds for an award of appellate attorney fees, she cites section 14-10-119, C.R.S. 2025, contending that there is a significant disparity in the parties' financial resources.  *See In re Marriage of Alvis*, 2019 COA 97, ¶ 30 (determining that a court may consider the parties' relative financial circumstances when awarding attorney fees pursuant to section 14-10-119).  We remand to the trial court to determine whether wife is entitled to an award of her appellate attorney fees on this ground and, if so, in what amount.  *See In re Marriage of Martin*, 2021 COA 101, ¶ 42.

## VII.   Disposition

¶ 37    The judgment is affirmed, and the case is remanded for the determination of appellate attorney fees.

JUDGE GOMEZ and JUDGE SULLIVAN concur.