580 So.2d 784 (1991)
CITIBANK, N.A., Citicorp Savings of Florida, and Carol Management Corporation, Appellants,
v.
JULIEN J. STUDLEY, INC., Appellee.
No. 90-1279.
District Court of Appeal of Florida, Third District.
April 9, 1991.
Rehearing Denied July 3, 1991.
*785 Steel Hector & Davis, and Jose I. Astigarraga, and Thomas R. Julin, and Jennifer Prior Devin, Miami, for appellants.
Floyd Pearson Richman Greer Weil Brumbaugh & Russomanno, and Gerald F. Richman, and Thomas Meeks, Miami, for appellee.
Before HUBBART, JORGENSON and GERSTEN, JJ.
PER CURIAM.
Appellants, Citibank, N.A. (Citibank), Citicorp Savings of Florida (Citicorp), and Carol Management Corporation (Carol Management) appeal a final judgment in an action to recover a real estate brokerage commission. We affirm in part, reverse in part, and remand.
Appellants, Citibank and Citicorp are separate, yet affiliated corporate entities, owned by the same bank holding corporation. Citibank has a corporate real estate department which assists affiliate entities in constructing buildings and searching for office and bank lease sites.
Through its corporate real estate department, Citibank contracted with appellee, Julien J. Studley, a real estate broker, to locate a suitable site for another affiliated entity, Citibank International. Citicorp eventually leased the property which appellee showed to Citibank International. Carol Management managed the site that Citicorp leased.
Appellants contend that Citibank International and Citicorp are independent entities, each individually searching for sites, and each using a different real estate broker. Appellants argue that they do not owe appellee a commission for finding the leased site, because Citicorp did not find the site through the efforts of appellee.
The trial court made findings of fact which resulted in liability for appellants. We find no error.
Upon appellate review, the findings of the trial court are presumed correct. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979); Anderman v. Miller, 359 So.2d 472 (Fla. 3d DCA 1978). It is not the function of this court to reweigh the evidence and the credibility of *786 the witnesses in the trial court proceedings. Froman v. Froman, 458 So.2d 833 (Fla. 3d DCA 1984).
We do find error, however, in the computation of appellee's damages. In a breach of contract action, where a party affirms the existence of a contract, the standard measure of damages is the benefit of the bargain. Rector v. Larson's Marine, Inc., 479 So.2d 783 (Fla. 2d DCA 1985), rev. dismissed, 486 So.2d 596 (Fla. 1986); Young v. Johnston, 475 So.2d 1309 (Fla. 1st DCA 1985); McCray v. Murray, 423 So.2d 559 (Fla. 1st DCA 1982); Sundie v. Lindsay, 166 So.2d 152 (Fla. 3d DCA 1964). Therefore, as a matter of law, the trial court erred in finding that 6% of the initial lease was the reasonable value of the broker's services.
The trial court found that a 6% commission is "what is normally paid in the Miami area." However, appellee's own schedule of brokerage fees provided:
Lease of Office Space
Upon the closing of a transaction involving the leasing of office space, the customary fee paid to the procuring broker is 4% aggregate rental over the initial lease term. The brokerage fee is paid one-half at the closing of the lease and one-half upon occupancy of tenant.
Further, the fee schedule provided:
The brokerage fee is increased to 6% if the transaction involves cooperating brokers.
Further evidence in the record establishes appellee's usual commission arrangement:
As per our conversation concerning the commission schedule it was agreed that on a Co-Broker basis Julian Studley would receive a (3%) three percent commission on the rent paid to the Lessor or a (4%) four percent commission on net rents. These commissions would be paid only after actual possession of space by Lessee and over a time period to be agreed upon by Julian Studley and Koger Properties, Inc.
Additionally, Carol Management's schedule of commissions provided for a 4% commission of the aggregate rental for the entire lease term payable: (1) 1/3 upon execution and delivery of the lease; (2) 1/3 upon occupancy; and (3) 1/3 on the first anniversary of occupancy. Although another broker negotiated a higher commission based on subsequent renewals of the lease, appellee played no part in negotiating any changes of commission.
Thus, the parties contemplated: either a 4% commission for one broker, or a 6% commission where more than one broker participated. The 6% commission was to be divided evenly between cooperating brokers. The fact that another broker may have negotiated higher commissions is irrelevant in determining appellee's damages. See, e.g., Persons v. Ibec Housing Corporation, 167 So.2d 894 (Fla. 2d DCA 1964).
In this case, two brokers participated in the transaction. Appellee found the site, the other broker negotiated the lease and closed the transaction. Accordingly, appellee is entitled to no less than 3%, if he cooperated with another broker. If he did not cooperate with another broker, then he is entitled to a 4% commission, the benefit of his bargain.
We therefore affirm as to the issues of liability, and reverse and remand for a determination of the proper damages and prejudgment interest. See, e.g., Argonaut Insurance Company v. May Plumbing Company, 474 So.2d 212 (Fla. 1985); Leon v. West Collier Properties, Inc., 575 So.2d 1316 (Fla. 2d DCA 1991).
Affirmed in part, reversed in part, and remanded.