870 So.2d 870 (2004)
G & G FASHION DESIGN, INC., Lisbet M. Ghilardi and William F. Younkin, Appellants,
v.
Enrique GARCIA, Appellee.
No. 3D02-3321.
District Court of Appeal of Florida, Third District.
February 11, 2004.
Rehearing and/or Clarification Denied April 21, 2004.
*871 Francine D. Holbrook, for appellants.
Dennis B. Freeman, Miami, for appellee.
Before SCHWARTZ, C.J., COPE, and WELLS, JJ.
WELLS, Judge.
Shareholders Lisbet Ghilardi and William Younkin appeal from a final judgment valuing shareholder Enrique Garcia's interest in a closely held corporation at $150,000. We affirm.
Enrique Garcia is a fifty per cent owner of G & G Fashion Design, Inc., a corporation that operates two clothing stores-Flash Swimwear and Flash Lingerieat the Bal Harbour Shops in Miami Beach. Lisbet Ghilardi and her husband, William Younkin, own the remaining fifty percent interest in G & G. In March 2001, Garcia brought suit to dissolve G & G. Ghilardi and Younkin, pursuant to section 607.1436 of the Florida Statutes, elected to purchase Garcia's fifty per cent interest in the corporation. Because the parties could not agree on the value of Garcia's shares, the trial court was obligated to "determine the fair value of the petitioner's shares as of the day before the date on which the petition [to dissolve the corporation] was filed...." § 607.1436(4), Fla. Stat. (2003).
During a five-day bench trial, the lower court heard conflicting evidence on valuing the shares of this closely held corporation. Ghilardi and Younkin presented testimony that the fair value of Garcia's shares of this on-going business should be zero based on the investment value method. Garcia presented evidence that his shares were worth $150,000 based on the market value method. The trial court adopted the market value method and valued Garcia's shares at $150,000.
Section 607.1436(4) and Florida case law neither define "fair value" nor provide criteria by which "fair value" may be measured. However, case law interpreting New York's similar statutory provisions, to which we have looked in the past for guidance, confirms that "fair value" rests on determining what a willing purchaser in an arm's length transaction would offer for an interest in the subject business:
Business Corporation Law § 1118 offers no definition of fair value and no criteria by which a court is to determine price or other terms of the purchase. Rather, fair market value, being a question of fact, will depend upon the circumstances of each case; there is no single formula for mechanical application.
The objective of proceeding under Business Corporation Law § 1118including the one now before usis to determine what a willing purchaser in an arm's length transaction would offer for petitioners' interest in the company as an operating business.
Matter of Seagroatt Floral Co., Inc., 78 N.Y.2d 439, 445, 576 N.Y.S.2d 831, 583 N.E.2d 287 (1991) (citations omitted); Munshower v. Kolbenheyer, 732 So.2d 385, 386 (Fla. 3d DCA 1999)(looking to New York case law as persuasive on issues regarding valuation of closely held corporations).
Determining what an arm's length purchaser of an interest in a closely held corporation would offer is "not an exact science." Seagroatt, 78 N.Y.2d at 445, 576 N.Y.S.2d 831, 583 N.E.2d 287. "Accordingly, courts in such proceedings confront *872 a variety of evidence and methods aimed at determining the price of minority interests...." Id. In most instances, the market value method of valuation is of little significance because shares of a closely held corporation are not publicly traded and purchase offers for these shares usually come from insiders:
A court's obligation to determine the "fair value" of the petitioner's shares in a closely held corporation presents a difficult problem. The statute does not define the term "fair value", and it fails to provide any criteria for determining "fair value".... The factors to be considered are, inter alia, market value, investment value, and net asset value. The weight to be accorded each factor depends upon the circumstances of the particular case. The value of the corporation should be determined on the basis of what a willing purchaser, in an arm's length transaction, would offer for the corporation as an operating business, rather than as a business in the process of liquidation.
Within the context of a closely held corporation, market value is usually of little or no significance because the shares of stock are not traded on any public market. Moreover, other than certain bona fide offers to purchase all of the outstanding stock of a corporation (i.e., through a merger or acquisition), a sale of the stock of a closely held corporation usually does not qualify as an arms-length transaction because the sale usually involves corporate officers, employees or family members....
Blake v. Blake Agency, Inc., 107 A.D.2d 139, 486 N.Y.S.2d 341, 347 (1985) (citations omitted)(emphasis added); see also Seagroatt, 78 N.Y.2d at 445, 576 N.Y.S.2d 831, 583 N.E.2d 287 (stating that closely held corporations are "legal entities that by their nature contradict the concept of `market' value," making it difficult to value the interests of their shareholders).
But unlike most instances, the court below had before it competent, substantial evidence of a good faith, arm's length offer to purchase by a disinterested third person. Specifically, Julia Rodriguez, an owner of a successful business in the same up-scale mall where G & G's two stores are located, testified that shortly before this action was brought, she had offered to purchase Garcia's shares for $150,000. According to Ms. Rodriguez, she had been approached by her accountant, who also was G & G's long-term accountant, about purchasing Garcia's shares. She subsequently met with Garcia to discuss G & G's financial condition, and with his permission, their mutual accountant provided Ms. Rodriguez with G & G's pertinent financial information which she used to create spreadsheets to evaluate the value of Garcia's shares. Ms. Rodriguez was also made aware of G & G's bank debt in excess of $300,000 and that this debt had to be personally secured by the shareholders. Ms. Rodriguez testified that she was unfazed by G & G's debt because her own store had carried more than $700,000 in debt when she purchased it, yet she had been able to satisfy the debt and turn the store into a profitable business, precisely what she hoped to accomplish with G & G. According to Ms. Rodriguez, based on the information that she had gathered, her experience and knowledge of this particular mall and its businesses, and her accountant's informed favorable recommendation, she offered $150,000 in writing to purchase Garcia's shares, an offer the trial court adopted as the value of Garcia's shares.
On this record, we cannot say that the trial court erred in considering or in relying upon either the market value approach or on Rodriguez's good faith, bona fide, *873 arm's length offer in valuing Garcia's shares. See Matter of Walt's Submarine Sandwiches, Inc., 173 A.D.2d 980, 569 N.Y.S.2d 492, 493 (1991)("The valuation process is fact specific with an emphasis on the particular circumstances of the case, including such pertinent evidence as prior attempts to sell the business, offers to purchase and other expert testimony")(emphasis added); McManus v. McManus, 282 A.D.2d 213, 723 N.Y.S.2d 165, 166 (2001)(finding that the amount paid to purchase shares of stock was a better indication of its value than the appraised value prepared by a consulting firm).
A trial court's selection of one valuation method over another does not require reversal. See McManus, 723 N.Y.S.2d at 166; Davis v. Alpha Packaging, Indus. Inc., 267 A.D.2d 384, 700 N.Y.S.2d 220, 221 (1999)(finding that "the determination of a fact-finder as to the value of a business, if it is within the range of testimony presented, will not be disturbed on appeal where valuation of the business rested primarily on the credibility of the witnesses and their valuation techniques"). The record in this case reflects a careful consideration of witness credibility and the weight to be attributed to Julia Rodriguez's testimony regarding valuation (and to some extent that of G & G's long-time accountant) on one hand, and that of Leslie Avener, Ghilardi's and Younkin's "valuation" witness, on the other.[1] On this record, we could reverse only by re-weighing the evidence and the credibility of the witnessesa function not ascribed to this court. See Cole v. Cole, 723 So.2d 925, 927 (Fla. 3d DCA 1999); Citibank, N.A. v. Julien J. Studley, Inc., 580 So.2d 784, 785-86 (Fla. 3d DCA 1991); Froman v. Froman, 458 So.2d 833, 833 (Fla. 3d DCA 1984).
Finding no reversible error in the remainder of the issues raised by the appellants, we affirm.
NOTES
[1] The record confirms, as the final judgment notes, that Ghilardi's and Younkin's "expert" was not hired to value, nor did she perform a true valuation of, G & G. Rather, Leslie Avener was hired only to consult with the parties, and the "value" that she ascribed to G & G was premised in significant part on information provided by Younkin and on assumptions that did not reflect the realities of this business.