IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

LALLY ORANGE BUICK PONTIAC
GMC, INC., ET AL.,

   Appellants,

 v.               Case No.  5D15-3582

SIMI SANDHU,

   Appellee.

_____/

Opinion filed December 22, 2016

Appeal from the Circuit Court
for Orange County,
Alice Blackwell, Judge.

Jennifer S. Eden and Christina Y. Taylor, of
Latham, Shuker, Eden & Beaudine, LLP,
Orlando, for Appellants.

Jennifer R. Dixon, Richard Dellinger and
Melody B. Lynch, of Lowndes, Drosdick,
Doster, Kantor & Reed, P.A., Orlando, for
Appellee.

PER CURIAM.

  Lally Orange Buick Pontiac GMC, Inc., et al. ("Appellants") appeal a final judgment containing a judicial appraisal that valued Simi Sandhu's shareholder interest in the corporation at $1.9 million. Because the trial court's valuation is not supported by competent, substantial evidence, we reverse.

Lally Orange Buick was an automobile dealership organized as a closely held corporation. The corporation was initially owned by Resham Lally, and his son, Rajinder Lally. In 2010, Rajinder and his wife, Simi Sandhu, divorced.[1] Pursuant to the final judgment of dissolution, Sandhu and Rajinder were each equitably distributed one-half of Rajinder's 50% share of Lally Orange Buick. Immediately after the dissolution, the Lallys formulated a plan to remove Sandhu as a shareholder through formation of a new corporation. Before Rajinder transferred one-half of his interest to Sandhu, Lally Orange Buick amended its articles of incorporation, through which it authorized an additional 20,500 shares of common stock.

In November 2013, Lally Orange Buick issued an "Appraisal Notice and Form Notice of Action by Written Consent," which informed shareholders about a planned merger of Lally Orange Buick into a new corporation, Orange Buick GMC, Inc. The Lallys sent shareholder notice of the merger to Sandhu. The notice indicated that the corporation's estimate of the fair value of her shares was $420 per share, which was the amount it would pay Sandhu pursuant to the dissolution of Lally Orange Buick.[2] Sandhu objected to this valuation and returned a counter-proposal that indicated she valued her interest at $5,066.67 per share, resulting in a total value of her 25% interest at $1.9 million. To reach this valuation, Sandhu relied on an undisclosed accountant's expert valuation.

The parties did not reach an agreement as to the value of Sandhu's shares, and Sandhu filed suit against the Appellants. Sandhu sought (1) a declaratory judgment to

---

[1] Coincidentally, the same judge presided over the dissolution of marriage action.

[2] This value was considerably less than the value the Lallys' own expert testified to at the subsequent trial.

establish that the merger was "ineffective and illegal"; (2) damages for Appellants' alleged breach of fiduciary duty; and/or (3) a judicial appraisal pursuant to section 607.1330, Florida Statutes (2013). Appellants also counterclaimed for a judicial appraisal.

During a non-jury trial, both parties presented expert testimony on the valuation of Sandhu's corporate shares. Sandhu's expert, Robert Morrison, is an accredited senior appraiser in business valuation, but this was the first case in which he performed as an expert witness for valuation of an automobile dealership. He utilized a single period capitalization method under an income approach to valuation for assessing Sandhu's interest. Morrison's methodology resulted in two valuations based on assumptions about certain shareholder loans that were in dispute before the trial court. Assuming the loans were debt capital, Morrison opined that the statutory fair value of Sandhu's 25% interest was $889,000 as of the date of the merger. Assuming the loans were equity capital, Morrison testified that the statutory fair value of Sandhu's interest was $1,031,000.

Appellants' expert, Ken Rosenfield, is a Certified Public Accountant who has extensive experience valuing automobile dealerships and testifying as an expert.[3] Rosenfield disagreed with Morrison's methods, and testified that Morrison's approach did not encompass an automobile-specific approach to valuation. He opined that a "multiple of earnings" approach was the industry standard for valuing automobile dealerships. Based on this approach, Rosenfield valued the entire corporation at $630,000. Rosenfield's valuation was revised in 2015 to correct the valuation period, and Rosenfield's ultimate valuation of the corporation increased by $383,000. However,

---

[3] Rosenfield was also the expert who testified about the valuation of Lally Orange Buick during the dissolution proceedings between Sandhu and Rajinder Lally.

3

according to Rosenfield, the only essential differences between the two experts' valuations were the number of years evaluated and the capitalization rate utilized.[4]

The trial court ultimately denied Sandhu's claim for declaratory judgment in Count I and her claim for damages for breach of fiduciary duty in Count II. However, the court found that Sandhu was entitled to judicial appraisal of her interest pursuant to Count III of the complaint and Appellants' counterclaim.

The court rejected Appellants' initial statutory valuation, as well as Rosenfield's expert testimony regarding valuation, and found that Rosenfield was unreliable. The court credited Morrison's testimony and found that Morrison provided the "appropriate business valuation methodology in accordance with industry standards." However, the court then adopted $1.9 million as the valuation of Sandhu's interest in Lally Orange Buick. This appeal follows.

Statutory appraisal rights are set forth in sections 607.1301 through 607.1333 of the Florida Statutes. Section 607.1301, Florida Statues (2013), defines the fair value of corporate shares:

> (4) "Fair value" means the value of the corporation's shares determined:
>
> (a) Immediately before the effectuation of the corporate action to which the shareholder objects.
>
> (b) Using customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal, excluding any appreciation or depreciation in anticipation of the corporate

---

[4] Morrison assessed a 3-year look-back period, and utilized a capitalization rate, also known as a multiple, of 3.56. Rosenfield used a 5-year look-back period and applied a multiple of 1.

4

action unless exclusion would be inequitable to the corporation and its remaining shareholders.

(c) For a corporation with 10 or fewer shareholders, without discounting for lack of marketability or minority status.

If a corporation engages in a merger process that requires the payout of the fair value of corporate shares, the corporation must provide notice and an estimate of the fair value of the shares, along with an offer of that fair value, to the shareholders. § 607.1322(1), (2)(a)–(c), Fla. Stat. (2013). If a shareholder is dissatisfied with the corporate appraisal, the shareholder may object in writing, provide his/her assessment of fair value of the shares, and demand payment. § 607.1326(1), Fla. Stat. (2013). If a shareholder's demand for payment remains unresolved, and a party seeks judicial appraisal of the corporate shares, the shareholder is entitled to judgment of fair value of the shares "as found by the court." § 607.1330(5), Fla. Stat. (2013). To facilitate this process, the trial court "may appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value." § 607.1330(4), Fla. Stat. (2013).

A trial court's determination of the appropriate method to determine statutory fair value is reviewed for abuse of discretion. Nunez v. Nunez, 29 So. 3d 1191, 1192 (Fla. 5th DCA 2010). However, the court's conclusion as to fair value must be "supported by competent, substantial evidence and properly conformed to the requirements for determining fair value." Dolan v. Springlite Bottled Water Corp., 656 So. 2d 211, 212 (Fla. 3d DCA 1995) (citing § 607.1301, Fla. Stat.). If the trial court is acting as the factfinder, it is "free to accept or reject the testimony of the business valuation expert[s]." Nunez, 29 So. 3d at 1192. However, absent competent, substantial evidence, a trial court's valuation constitutes an abuse of discretion. Id.

5

Appellants argue that the only evidence regarding a $1.9 million valuation figure was Sandhu's appraisal rights form containing her counter-proposal and Sandhu's testimony that she valued her shares at that amount. They contend that this does not constitute competent, substantial evidence to support the trial court's valuation and note that the trial court adopted neither experts' valuation figure in the final judgment. Sandhu argues that her appraisal rights form supported the valuation because it was based on an independent accountant's valuation, and the trial court acted within its discretion in adopting the $1.9 million valuation figure.[5]

The only record evidence supporting the $1.9 million valuation figure was Sandhu's testimony that she valued her shares at that amount, and the appraisal rights form Sandhu returned to the corporation that reflected that figure.[6] Moreover, Sandhu's testimony regarding the $1.9 million valuation did not detail any valuation methods or point to documentation that would support a valuation of $1.9 million. The final judgment likewise does not provide findings or an explanation of how the trial court arrived at the $1.9 million valuation figure. Thus, the trial court's valuation figure is not supported by competent,

---

[5] Sandhu also argues that Appellants invited any error in the trial court's valuation. See Gupton v. Vill. Key & Saw Shop, 656 So. 2d 475, 478 (Fla. 1995) (explaining "a party cannot successfully complain about an error for which he or she is responsible or of rulings that he or she invited the trial court to make"). She claims that because Appellants argued to the trial court that it had discretion to reject the expert opinions at trial and adopt its own valuation, they invited any error in the court's valuation. Appellants indeed argued below that the trial court had discretion to calculate the valuation figure, and it was free to accept or reject the expert testimony. However, Appellants did not argue that the trial court could choose a valuation that was not based on the evidence, and Appellants also argued that to adopt the $1.9 million figure would be a punitive and therefore improper. Thus, Sandhu's reliance on the invited error doctrine is inapposite.

[6] While Sandhu claims that this figure was based on an independent accountant's valuation, this accountant did not testify at the trial nor were any documents submitted into evidence that supported this assertion.

substantial evidence, and the court abused its discretion in adopting that figure. Cf. Blossman v. Blossman, 92 So. 3d 878, 878 (Fla. 1st DCA 2012) (holding there was no competent, substantial evidence to support trial court's valuation of corporate stock, while each expert relied on different valuation methods and provided different valuation figures, it appeared trial court simply "split the difference between the two valuations"); Nunez, 29 So. 3d at 1192 (Fla. 5th DCA 2010) (reversing valuation of corporation, although trial court could reject expert testimony regarding valuation, trial court could not base valuation solely on letter of intent to purchase from a defunct purchaser that was no longer seeking acquisition of the corporation); Sheffield v. Sheffield, 522 So. 2d 986, 986 (Fla. 1st DCA 1988) (reversing valuation of corporations in dissolution proceeding because trial court based valuation solely on tax returns, which did not reveal the actual fair value of the corporations and no other record evidence supported such valuation).

The trial court may appoint independent appraisers to recommend a decision on the question of fair value. § 607.1330(4), Fla. Stat. (2013). The court may also credit one expert witness's method of computation over another. G & G Fashion Design, Inc. v. Garcia, 870 So. 2d 870, 872 (Fla. 3d DCA 2004) (citing CDC Capital Inc. v. Gershon, 723 N.Y.S.2d 166, 168 (N.Y. Sup. Ct. 2001)). Moreover, the court may utilize an expert's valuation technique to formulate an independent valuation based on the evidence presented.[7] See, e.g., Cox Enters., Inc. v. News-Journal Corp., 510 F.3d 1350, 1358 (11th

---

[7] Likewise, a trial court's independent valuation is not limited to one expert's testimony; the court may formulate its valuation by using different portions of the experts' testimony that it credits or rejects. Cf. Erp v. Erp, 976 So. 2d 1234, 1236 (Fla. 2d DCA 2008) (finding no abuse of discretion in trial court's approach of accepting some portions of each expert's analysis; reversing on other grounds). However, as in this case, where the trial court wholly rejects one expert's testimony over the other, this limits the scope of the evidence on which the court may rely to formulate such an independent valuation.

7

Cir. 2007). If the valuation is within the range of the testimony presented at trial, it will not result in reversible error when it rests primarily on witness credibility and valuation techniques. Garcia, 870 So. 2d at 872 (quoting Davis v. Alpha Packaging, Indus. Inc., 700 N.Y.S.2d 220, 221 (N.Y. Sup. Ct. 1999)). Here, however, the trial court rejected Rosenfield's expert testimony, credited Morrison's testimony, but, without explanation, adopted neither of these experts' valuations. The trial court also did not make findings in the final judgment that would explain how it independently arrived at the $1.9 million valuation figure. On remand, the trial court must adopt a valuation that is supported by competent, substantial evidence, or appoint an independent appraiser to provide a recommendation on the fair value of Sandhu's shares pursuant to section 607.1330(4), Florida Statutes (2013).

REVERSED and REMANDED.

ORFINGER, COHEN JJ. and SEMENTO, L.J., Associate Judge, concur.