976 So.2d 1234 (2008)
Mary Colleen ERP, Appellant,
v.
Albert John ERP, Appellee.
Nos. 2D05-3144, 2D06-1934.
District Court of Appeal of Florida, Second District.
March 28, 2008.
*1235 Robert L. Donald of Law Offices of Sherman and Donald, Fort Myers; and William T. Haverfield of The Pavese Law Firm, Fort Myers, for Appellant.
Nicole L. Goetz and Victoria M. Ho of Asbell, Ho, Klaus & Goetz, P.A., Naples, for Appellee.
ALTENBERND, Judge.
Mary Colleen Erp appeals the final judgment of dissolution of her marriage to Albert John Erp, arguing that the trial court made various errors in fashioning an equitable distribution of the parties' marital assets. She also appeals portions of an authorized postjudgment order that slightly modified the final judgment. We reverse only that portion of the judgment permitting the Husband to pay an equalizing payment for equitable distribution over ten years at a reduced rate of interest. We remand for the trial court to apply the statutory interest rate in section 55.03, Florida Statutes (2004), to this payment as of a date no later than the date the final judgment was entered. As to the other issues raised by the Wife, we affirm. We specifically conclude that the trial court did not abuse its discretion by accepting an expert's opinion that a marketability discount was appropriate in calculating the value of the couple's eighty percent interest in a closely held S-corporation.
I. THE FAMILY BUSINESS AND THE TRIAL COURT'S RESOLUTION OF EQUITABLE DISTRIBUTION
The parties married in 1986. Both have adult children from previous marriages. Shortly after the marriage, the parties acquired a small recreational vehicle (RV) dealership located near Interstate 75 in Lee County. As a result of the couple's efforts, the dealership became very successful and grew substantially during the marriage. At the time of the final hearing, the business was producing over a million dollars in net annual income for the parties.
The business was structured as a subchapter S-corporation, with the Husband and Wife each owning forty percent of the stock. All of this stock, for purposes of the dissolution, was a marital asset. The remaining twenty percent of the stock was owned in two ten percent blocks, one of the blocks held by the Wife's son from her prior marriage, and the other owned by the Husband's son from his prior marriage. Thus, neither party individually owned a majority of the corporation, and neither could control the corporation by vote without obtaining the vote of their spouse or the vote of both children.
The primary dispute in this proceeding centered around the valuation and equitable distribution of the parties' interest in this business and the real estate associated with it. While this action was pending, the Wife and her son also filed a separate action for judicial dissolution of the corporation pursuant to section 607.1430(2)(a), Florida Statutes (2003), alleging that the directors were deadlocked in the management of the corporate affairs. The corporate lawsuit did not proceed to trial prior to the final hearing in this case. Thus at least for the Husband and Wife, the issues involving the value of the corporation and *1236 the distribution of their shares were decided in this dissolution of marriage proceeding.
The Husband and Wife both agreed that one of them should leave the marriage owning eighty percent of this corporation and the other party should receive one-half of the fair market value or fair value of the parties' interest in the business as equitable distribution. Each of them asked to be awarded the eighty percent shares of stock. Each party presented the testimony of a well-qualified expert, and each expert presented a report regarding the proposed value of the business and the parties' interest in the business as of December 31, 2003, the last full year for which financial information was available at the time of the trial.
The Husband's expert opined that the business as a whole was worth $4.56 million, while the Wife's expert opined that it was worth $12.5 million. Both experts generally used an income-based approach to valuing the business, and both experts explained in detail how they had calculated their proposed value. They also testified to the value of the parties' respective interests in the corporation based upon the number of shares held by each.
Ultimately, the Husband's expert presented a demonstrative exhibit detailing the differences between the two appraisals. That demonstrative aid explained that the Husband's expert had (1) "tax-effected" the income stream of the company; (2) performed a regression analysis; (3) determined that a working capital adjustment was not appropriate; (4) measured the company's income based upon a "last in, first out" (LIFO) accounting method rather than a "first in, first out" (FIFO) method; (5) applied a minority discount to each party's forty percent shares; and (6) applied a twenty-five percent marketability discount to the value of the business. Based upon the Husband's expert's analysis, the Wife's one-half share of the parties' share of the corporation was worth $720,000. In contrast, the Wife's expert maintained that the Wife's one-half share of the parties' interest was worth $5 million.
The trial court determined that the Husband should be awarded the parties' eighty percent interest in the corporation and that the Wife should receive one-half of the fair market value of that interest as equitable distribution. In determining the fair market value of the business, the court accepted some portions of each expert's analysis. After some interaction between the court, the experts, the parties, and their counsel regarding the court's initial conclusions, the court found the value of the business as a whole was $6.2 million. The court valued the parties' eighty percent interest at $4.96 million.
The court arrived at this calculation by beginning with the Wife's expert's figure of $12.5 million. The court then resolved the six factors explained by the demonstrative aid by (1) rejecting the Husband's expert's advice to "tax-effect" the income stream; (2) applying a regression analysis as recommended by the Husband's expert; (3) including an adjustment for working capital as recommended by the Wife's expert; (4) utilizing a LIFO accounting method as explained by the Husband's expert; (5) rejecting the Husband's expert's application of a minority ownership discount; and (6) applying a marketability discount consistent with the approach taken by the Husband's expert, but at the reduced level of ten percent. Based upon this calculation, the court found that the Wife's one-half interest in the parties' share of the corporation was $2.48 million.
Because the parties' interest in the business was by far the most valuable marital asset, the trial court had to fashion an equitable distribution that required a large *1237 equalizing payment by the Husband. This payment needed to be structured in a manner that would fairly compensate the Wife without undue financial jeopardy to the Husband or the ongoing business. The trial court decided that the Husband would be allowed to make the equalizing payment of $3,943,197 by paying one-fifth of the amount immediately, with the remainder paid over ten years with interest accruing at the rate of four percent. As justification for the four percent interest rate, which is lower than the legal interest rate, the court explained the rate was "somewhat less than prime rate" and was chosen because "the business is a risky operation" for which a potential buyer would pay a lower interest rate. Notably, neither expert's testimony touched on this issue.
The court's oral pronouncement concerning the disposition of the corporate shares occurred on September 17, 2004. The final judgment of dissolution was not entered until December 28, 2004. The judgment indicated that the Wife's equalizing payment would be liquidated as of September 17, 2004, and that the four percent interest on the equalizing payment would accrue from that date.
The Wife sought rehearing on various issues. The trial court addressed those issues as well as postjudgment motions to enforce the final judgment and entered a postjudgment order which is also a subject of this appeal. For the most part, the final judgment remained unchanged by the subsequent order. However, the trial court concluded that the four percent interest on the equalizing payment should not begin to accrue until May 26, 2005, when the trial court denied the Wife's motion for rehearing.
In this appeal the Wife challenges, among other things, the trial court's decision to apply the marketability discount of ten percent in arriving at the value of the parties' interest in the business and the reduced rate of interest applied to the equalizing payment and the date upon which the interest was held to accrue. We find no abuse of discretion in the trial court's decision to apply the marketability discount recommended by the Husband's expert and supported by that expert's testimony. We agree, however, that the Wife was entitled to the statutory rate of interest at least from the date the final judgment was entered.

II. THE TRIAL COURT HAD DISCRETION TO RELY UPON AN EXPERT'S OPINION THAT A MARKETABILITY DISCOUNT WAS APPROPRIATE IN DETERMINING THE VALUE OF THE PARTIES' INTEREST IN THE BUSINESS
The Wife urges this court to hold that the trial court erred, as a matter of law, in applying a marketability discount to the parties' interest in the RV dealership. She claims that a marketability discount is never appropriate in a dissolution of marriage action that effectively results in a corporate buy-out of one spouse. Although the Wife presents this argument well and there is case law that appears to resolve similar issues as questions of law, we doubt that this issue is actually a legal issue appropriate for such a rule. The decisions that judges make when valuing businesses in the context of a divorce are fact-intensive and usually heavily dependent upon the opinions of well-trained experts. The question is not whether the trial court can employ one method or another in valuing a business, but is more appropriately phrased as whether an expert may be permitted to testify and render an opinion based upon a valuation method that the expert claims to be acceptable within his or her profession. If the expert is permitted to so testify, then *1238 the trial court, as a finder-of-fact, should have considerable discretion in deciding to what extent it accepts or rejects the expert testimony.[1]
As support for her position that the trial judge should be prohibited from applying a marketability discount, the Wife points to section 607.1301(4), Florida Statutes (2005), which defines the "fair value" of a corporation in the context of a shareholder's right to appraisal. Section 607.1301(4)(c) prohibits a discount for lack of marketability or for minority status in such an appraisal.
Section 607.1301(4)(c) was enacted after the entry of the final judgment of dissolution of marriage in this case. See ch.2005-267, §§ 2, 27, Laws of Fla. at 1811, 1889. Section 607.1301 expressly states that its provisions apply only to sections 607.1302 to 607.1333, those sections providing certain shareholders appraisal rights upon the occurrence of specific events affecting the nature of the corporation or the shares held. Thus the Wife does not argue that this statute specifically applies to prevent the application of a marketability discount, but rather argues by analogy that the same principles that fueled this legislation regarding shareholder appraisal rights should apply in what is effectively a corporate dissolution or buyout occurring because of a dissolution of marriage. The Wife overlooks, however, a distinction made in corporate law between a circumstance in which minority shareholders exercise their appraisal rights due to a significant change in the corporation that was beyond their control, and a circumstance in which majority shareholders who are deadlocked seek a corporate dissolution.
Generally speaking, the appraisal rights accorded to minority shareholders under sections 607.1302 to 607.1333 are intended to protect them from oppression at the hands of the majority shareholders, especially in the context of closely held corporations. See, e.g., Douglas K. Moll, Shareholder Oppression and "Fair Value": Of Discounts, Dates, and Dastardly Deeds in the Close Corporation, 54 Duke L.J. 293 (Nov.2004). Traditionally, unanimous shareholder approval was required for actions that changed the fundamental nature of a corporation. See Barry M. Wertheimer, The Shareholders' Appraisal Remedy and How Courts Determine Fair Value, 47 Duke L.J. 613, 614 (Feb.1998). When the law shifted away from requiring unanimous approval of such changes, the appraisal remedy was created to provide certain rights to the minority shareholders in exchange for this loss of veto power. Id. at 614-15. Today, the appraisal remedy "serves a minority shareholder protection role, sometimes providing liquidity to shareholders, but most often operating to protect minority shareholders who are cashed out of their investment." Id. at 616. It is in this context that section 607.1301(4)(c) prohibits the application of a marketability discount in the valuation of the closely held corporation. It prevents majority shareholders from effecting a fundamental change in the corporation at the expense of the minority shareholders and also arguing that the compensation of dissenting minority shareholders should be further reduced by way of a marketability discount. See Pueblo Bancorporation v. Lindoe, Inc., 63 P.3d 353, 364 (Colo.2003) ("The dissenters' rights statute serves as the primary assurance that minority shareholders will be properly compensated for the involuntary loss of their investment.").
*1239 In this case, the Wife is not the victim of majority shareholder oppression. From her perspective, there has been no involuntary change in the fundamental nature of the corporation.[2] Rather, she and the Husband held an equal amount of the shares in the corporation. She and the Husband agree they can no longer run the business together and that one party must buy out the other's share. Thus, the facts presented here are akin to an action for judicial dissolution of a corporation based upon a deadlock in the management of the corporation's affairs pursuant to section 607.1430(2)(a). Indeed, the Wife pursued such an action in addition to seeking the Husband's shares in the action for dissolution of marriage.
There admittedly is a significant debate about when marketability discounts are appropriate in any proceeding requiring the valuation of a closely held corporation. See, e.g., Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 734 A.2d 721 (1999). It seems that the debate is sometimes led astray by the application of broad generalizations that do not differentiate; between the types of proceedings within which valuations are required, nor acknowledge that the appropriate analysis for the valuation of a business may change depending upon the specific legal and factual context presented. What is appropriate in the oppressed shareholder or minority appraisal rights cases may not necessarily be desirable in a judicial dissolution of a corporation or in an action for dissolution of marriage involving equitable distribution.
In the context of judicial dissolution of corporations, the context perhaps most analogous to the scenario presented in this particular action for dissolution of marriage, Florida courts have generally accorded discretion to the trial court to determine, based upon the evidence and circumstances presented, whether a marketability discount should be applied in the valuation of a closely held corporation. See, e.g., Munshower v. Kolbenheyer, 732 So.2d 385, 386 (Fla. 3d DCA 1999); see also Cox Enters., Inc. v. News-Journal Corp., 469 F.Supp.2d 1094, 1108 (M.D.Fla. 2006) ("The court in Munshower merely determined . . . that courts may apply a lack-of-marketability discount when valuing shares in a closely-held corporation; it did not determine that they must do so."). This same discretion has been applied in dissolution of marriage cases involving the valuation, but not the distribution, of corporate stock. See Parry v. Parry, 933 So.2d 9 (Fla. 2d DCA 2006); Williams v. Williams, 683 So.2d 1119 (Fla. 3d DCA 1996); Miller v. Miller, 662 So.2d 391 (Fla. 5th DCA 1995).
We conclude that it is inappropriate for this court to prohibit the application of a marketability discount under these circumstances. Rather, a trial court should be accorded the discretion to determine whether a marketability discount should apply to the valuation of a closely held corporation in a dissolution of marriage case where the court is traditionally charged with achieving equity through the use of various remedies. As a result, the best way for a litigant to address the appropriateness of a marketability discount is through the examination on cross-examination of a valuation expert.
In this case, the trial court had expert testimony indicating a marketability discount was appropriate. We are not convinced that any fact established during cross-examination required the trial court to completely reject that testimony. It is *1240 perhaps noteworthy that the trial court reduced the recommended discount from twenty-five percent to ten percent in light of other evidence adduced at trial. We therefore find no abuse of discretion in the trial court's decision to apply a ten percent marketability discount in this case.

III. THE TRIAL COURT ERRED IN ESTABLISHING THE INTEREST RATE AND THE DATE OF ITS ACCRUAL
We now turn to the trial court's decision to permit the Husband to pay the Wife an equalizing amount of $3,943,197 at a reduced interest rate, with the accrual of interest deferred to a date beyond the entry of the final judgment. As explained in section I, the Husband was ordered to pay one-fifth of this amount, or $788,639.40, immediately upon entry of the final judgment. The remaining balance was to be paid in equal monthly installments for ten years, subject to an interest rate of four percent. In the postjudgment order, the trial court delayed the accrual of interest on this amount until the date the court disposed of the Wife's motion for rehearing.
The Wife's interest in the marital estate was liquidated as of the entry of the final judgment. No one suggests that she retained voting rights on her shares of stock or that she had any right to income from those shares during the period when the case was pending on rehearing. The law generally mandates a statutory rate of interest on monetary awards from the date of the entry of the judgment. See §§ 55.03, 687.01, Fla. Stat. (2004); Amerace Corp. v. Stallings, 823 So.2d 110 (Fla. 2002).[3]
We recognize that the Fifth District has held that the selection of an appropriate interest rate may be a matter of some discretion in dissolution of marriage cases. See Rey v. Rey, 598 So.2d 141, 145 (Fla. 5th DCA 1992). We need not decide in this case whether we agree with the Fifth District that such discretion may be accorded in light of sections 55.03 and 687.01. Even if the trial court did have discretion to alter the interest rate, it could not use that discretion to lower the interest rate in the absence of competent, substantial evidence justifying a lower interest rate.
The trial court justified the rate by explaining the rate was "somewhat less than prime rate" and was chosen because "the business is a risky operation" for which a potential buyer would pay a lower interest rate. We note that a buyer does not generally pay interest to a seller; instead, a buyer pays interest to a lender. If a business is risky, a commercial financial lender tends to charge a higher interest rate. Thus, although there is no evidence that this business is "risky," such evidence would be a reason to give the Wife a higher interest rate than the legal rate, not a lower one. The trial court has essentially compelled the Wife to become the Husband's lender at what the trial court recognizes to be a commercially unreasonable *1241 rate. We conclude that nothing in the law or in the evidence presented gives the trial court that discretion. Accordingly, the statutory interest rate should be applied in this case. It should accrue from the date of the final judgment. Nothing occurred in the postjudgment proceedings that would justify altering the standard date for accrual of interest.
We therefore affirm the final judgment of dissolution of marriage and the postjudgment order in all but two respects. The final judgment must be modified to reflect that the statutory rate of interest applies to the equalizing payment owed by the Husband, and the provision of the postjudgment order delaying the accrual of interest to a date beyond the entry of the final judgment must be vacated in favor of a provision applying the interest rate as of a date no later than the entry of the final judgment.
Affirmed in part, reversed in part, and remanded with directions.
DAVIS and VILLANTI, JJ., concur.
NOTES
[1] We note that in a civil or criminal case, the standard jury instructions inform the jury that they, as the fact-finders in the case, can accept, reject, believe, or disbelieve all or any part of an expert's testimony. Fla. Std. Jury Instr. (Civ.) 2.2(b); Fla. Std. Jury Instr. (Crim.) 3.9(a).
[2] The children involved in this corporation may be in a different situation. Prior to the divorce, both children apparently needed to vote in favor of any decision requiring a vote of stock. Now the Husband owns eighty percent of the stock.
[3] The Wife argues not only that she is entitled to the higher rate of interest from the date of the final judgment, December 28, 2004, but that the interest should accrue as of September 17, 2004, the date of the trial court's oral pronouncement. Our record does not reveal what actions the parties took regarding the operation or distribution of the corporation during this significant time period. As a result, we hold only that the court must apply the higher interest rate as a matter of law as of a date no later than the entry of the final judgment. On remand, however, the court may reconsider whether the circumstances occurring between the issuance of the oral pronouncement and the entry of the final judgment justify the accrual of the higher interest rate as of a date before the entry of the final judgment.