**In re the MARRIAGE OF Chuck E. THORNHILL, Appellee and Cross–Appellant,**

**and**

**Antoinette F. Thornhill, Appellant and Cross–Appellee.**

No. 07CA1654.

Colorado Court of Appeals, Div. I.

Aug. 21, 2008.

Vicki A. Alsin, P.C., Vicki A. Alsin, Grand Junction, Colorado, for Appellee and Cross–Appellant.

Griff, Larson, Laiche, Brennan & Wright, Harry Griff, Grand Junction, Colorado, for Appellant and Cross–Appellee.

Opinion by Judge TERRY.

In this dissolution of marriage action, we determine that: (1) the separation agreement entered into between Antoinette F. Thornhill (wife) and Chuck E. Thornhill (husband) is unconscionable; (2) it was not error for the trial court to apply a marketability discount to the valuation of a closely held business in which husband is a majority shareholder; and (3) the trial court erred in its award of temporary maintenance to wife. We affirm the trial court's judgment and order in part, reverse in part, and remand for further proceedings.

### I. Wife's Appeal

#### A. Enforceability of the Parties' Separation Agreement

■ Wife first argues that the trial court erred in finding the separation agreement conscionable. We agree.

Parties to a marriage, attendant upon their separation or dissolution of the marriage, may enter into a written separation agreement providing for maintenance and the disposition of property. § 14–10–112(1), C.R.S. 2007. Such provisions are binding on the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, that the agreement is unconscionable. § 14–10–112(2), C.R.S.2007.

Resolution of the conscionability issue here is based on interpretation of the agreement and on largely uncontroverted facts. Therefore, we are not bound by the trial court's determination that the agreement is conscionable. *Cf. In re Marriage of Lemoine–Hofmann*, 827 P.2d 587, 590 (Colo.App.1992) (court of appeals would not be bound by trial court's findings regarding conscionability of prenuptial agreement where resolution of the issue was based on interpretation of agreement and uncontroverted facts). *See also In re Marriage of Manzo*, 659 P.2d 669, 671 (Colo.1983) (supreme court was not bound by trial court's conclusion that agreement was unconscionable).

■ " '[B]ecause of the fiduciary relationship between husband and wife, separation agreements generally are closely scrutinized by the courts, and such agreements are more readily set aside in equity under circumstances that would be insufficient to nullify an ordinary contract.' " *Manzo*, 659 P.2d at 674 (quoting *Levine v. Levine*, 56 N.Y.2d 42, 451 N.Y.S.2d 26, 436 N.E.2d 476, 478 (1982)). *See also* C.R.C.P. 16.2(e)(10) (establishing duty of parties to dissolution of marriage

proceeding to provide full disclosure of all material assets and liabilities); C.R.C.P. Form 35.4, § 3(a) (stating that parties to domestic relations proceedings must answer interrogatories "with the understanding that they stand in a fiduciary relationship with each other").

■ A court reviewing a separation agreement for conscionability should first review the provisions for fraud, overreaching, concealment of assets, or sharp dealing not consistent with the obligations of marital partners to deal fairly with each other. However, even where the trial court finds no fraud, overreaching, concealment of assets, or sharp dealing, we are still required to review the agreement to determine whether it is "fair, just and reasonable." *In re Marriage of Wigner*, 40 Colo.App. 253, 255, 572 P.2d 495, 496 (1977); 3 Colo. Prac., Methods of Practice § 95.14 (5th ed.). We do this by looking at the economic circumstances of the parties which result from the agreement.

Here, the parties were married for 27 years before they separated. During most of the marriage, wife cared for the children and held several low-wage jobs while husband worked in the oil business. The family lived for many years in various oil field camps in desolate parts of Wyoming. Although husband earned a sufficient amount to meet his family's needs, his income during most of that time did not approach the substantial sums he began to earn after starting an oil and gas equipment sales and servicing business (the business) in 2001. At the time of the permanent orders hearing, husband's business valuation expert valued his 70.5% ownership share of the business at $1,625,000, after applying a 33% marketability discount. Husband also signed a financial disclosure stating that his total monthly income before expenses was nearly $15,000. Wife's disclosure showed her total monthly income before expenses was less than $5,000.

The parties entered into a separation agreement providing for maintenance to wife and dividing the marital property. However, by the time of the scheduled court hearing to enter a decree based on the agreement, wife realized that at the time she signed the agreement, she had not had a good under-

standing of the value of the marital assets, and therefore she disavowed the agreement as unfair to her.

Because of wife's disavowal of the agreement, the matter was set for a permanent orders hearing. In its findings after that hearing, the trial court did not find fraud, overreaching, concealment of assets, or sharp dealing. Instead, it found the agreement to be "both enforceable and equitable."

After considering the totality of the circumstances, we conclude the property disposition is not fair, just, or reasonable, *Manzo*, 659 P.2d at 674, and we set it aside and remand for a new permanent orders hearing. The following facts support our conclusion that the agreement is unconscionable:

- Importantly, despite the fact that the parties had more than one million dollars in marital assets, wife was not represented by counsel at the time the separation agreement was negotiated and signed. Although in recent years she earned a graduate degree in occupational therapy, the record does not indicate she is sophisticated in legal or financial matters. *See In re Marriage of Seely*, 689 P.2d 1154, 1160 (Colo.App.1984) (court closely scrutinizes separation agreement where one party was not represented by counsel).

- Wife's father, who was chief financial officer of the business, had assisted in negotiating the separation agreement, and in the trial court's ruling following the permanent orders hearing, the court based its determination of conscionability largely on the father's testimony. However, purely by virtue of his role as chief financial officer, the father was required to attempt preservation of the business assets, which necessarily resulted in dual loyalties under the circumstances presented here.

- Wife testified to her lack of mathematical ability, her need to rely on her father to explain financial details of the settlement, her repeated statements that she did not understand the details, and the fact that she was never presented with the promissory note referenced in the

agreement concerning payment of husband's obligation to her.

Thus, even accepting the court's implicit finding that there was no fraud, overreaching, concealment of assets, or sharp dealing, we conclude that the agreement is unconscionable. To accomplish the parties' avowed purpose of dividing equally the marital assets that existed at the time of the agreement, it provided that husband would pay wife $752,692, half of what was represented to be the marital assets at the time the agreement was entered into. However, he was not required to pay that sum to wife immediately. Rather, the parties' agreement called for him to pay it in equal monthly installments of $6,272 over ten years, and failed to require him to pay her interest on the total sum or to secure the obligation.

Accordingly, wife lost the ability to obtain the full use and enjoyment, as well as the investment value, of the entire sum, while husband, whose income is substantially greater than wife's, obtained the considerable benefit of retaining the use, enjoyment, and investment value of the unpaid balance. Thus, the present value of the payments to wife was considerably less than $756,692. As wife testified, "[husband] wants me to be [his] bank." Even applying a modest interest rate, the accumulated interest on $752,692 over ten years would be a considerable sum.

We conclude that this combination of factors—wife's lack of understanding of the value of the marital assets; her lack of legal representation and independent financial advice; her father's conflicting roles as her financial advisor and chief financial officer of the business in which husband was majority shareholder; and the failure to provide for interest on such a large obligation over such a lengthy period—results in a property distribution that is not "fair, just and reasonable." *See Manzo,* 659 P.2d at 671; *Seely,* 689 P.2d at 1160. *Cf. In re Marriage of Weck,* 706 P.2d 436, 437 (Colo.App.1985) (where parties' agreement, including stipulated values and property division, was made in open court in the presence of counsel for both parties, wife acknowledged she understood agreement and was satisfied it was fair

and equitable, and there was no evidence of overreaching, concealment of assets, sharp dealing, or fraud, there was no basis to conclude agreement was unconscionable).

Wife raises other grounds supporting her argument that the separation agreement is unconscionable. However, because we have concluded the lack of an interest provision renders the entire agreement unconscionable, we need not reach, and express no opinion as to, the conscionability of other provisions.

Because the issues of property, maintenance, and the payment of attorney fees and costs, are inextricably intertwined, we remand to the trial court with directions to vacate the property settlement and to enter new permanent orders. Because of our resolution of this issue, we need not address wife's other contentions regarding errors in the separation agreement and the date of commencement of permanent maintenance.

On remand, the trial court should also consider the division's decision in *In re Marriage of Rose,* 134 P.3d 559, 562–63 (Colo. App.2006) (concluding that trial courts have authority under § 14–10–119, C.R.S.2007, to order a party to advance the payment of prospective attorney fees and costs of the other party during a dissolution action, particularly where the parties have widely disparate financial resources).

### B. Valuation of the Business

■ Because it may arise on remand, we consider wife's contention that no marketability discount should have been applied to the valuation of the business. Wife contends the holding of *Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353 (Colo.2003), should be extended to dissolution proceedings. We disagree.

In *Pueblo Bancorporation,* the supreme court held that no marketability discount may be applied when determining the fair value of a dissenting corporate shareholder's interest pursuant to the dissenter's rights statutes, section 7–113–101 through 302, C.R.S.2007. The court's conclusion was based on an in-depth analysis of the Colorado statutes and of similar statutes enacted by

other jurisdictions, as well as of the Model Business Corporation Act.

Key to the court's holding was its interpretation that the statutes were intended to protect minority shareholders from the vagaries of cash-out mergers, in which they are involuntarily "cashed out of their investment," and to ensure "that minority shareholders will be properly compensated for the involuntary loss of their investment." *Pueblo Bancorporation*, 63 P.3d at 364. The court stated:

> An interpretation of "fair value" that gives minority shareholders "less than their proportionate share of the whole firm's fair value would produce a transfer of wealth from the minority shareholders to the shareholders in control. Such a rule would inevitably encourage corporate squeeze-outs."

*Id.* at 364 (quoting *In re Valuation of Common Stock of McLoon Oil Co.*, 565 A.2d 997, 1005 (Me.1989)).

We conclude the considerations that underlie the *Pueblo Bancorporation* decision are inapplicable in a dissolution proceeding for several reasons. The dissolution statutes do not contain the "fair value" language of section 7–113–101(4) that was critical to the court's analysis. Its comprehensive review of similar statutes in other jurisdictions led to its conclusion that "fair value" does not mean "fair market value," and, as a result, the common practice of including a marketability discount in calculating fair market value is not permitted in dissenting shareholder valuations. *Pueblo Bancorporation*, 63 P.3d at 361.

We also decline to adopt, at wife's urging, the holding of *Brown v. Brown*, 348 N.J.Super. 466, 792 A.2d 463 (App.Div.2002), in which the New Jersey appellate court extended the reasoning of cases under the dissenting shareholder statutes to hold that marketability discounts are not appropriate in dissolution proceedings.

We are instead persuaded by the decisions of numerous other jurisdictions that have concluded marketability discounts may be applied in valuing shares in closely held corporations in dissolution proceedings. Such a discount would be applied to reflect the fact that shares of stock in such corporations are less marketable than publicly traded stock, a factor that an ordinary buyer would take into consideration in deciding what to pay for the shares. *See Marriage of Tofte*, 134 Or.App. 449, 457–58, 895 P.2d 1387, 1392 (1995); *see also* Stephen A. Hess, Annotation, *Use of Marketability Discount in Valuing Closely Held Corporation or Its Stock*, 16 A.L.R. 6th 693, § 10 (2006) (collecting cases).

Consistent with the reasoning of these cases, we conclude that a trial court's failure, in an appropriate case, to apply a marketability discount to an equitable division of marital property under section 14–10–113(1), C.R.S.2007, could unfairly penalize a party for ownership of shares that cannot be readily sold or liquidated. Trial courts in dissolution cases act as courts of equity and should have discretion whether to apply a marketability discount in valuing closely held corporations in dissolution proceedings. *Erp v. Erp*, 976 So.2d 1234, 1239–40 (Fla.Dist.Ct.App.2008).

Consequently, we conclude that the trial court here did not abuse its discretion in applying such a discount with respect to the valuation of the parties' interest in the business, and that, on remand, the court may, in its discretion, apply a marketability discount.

We express no opinion as to the amount or percentage of the discount that may be applied. *See Sommer v. Sommer*, 176 A.D.2d 1022, 1024, 575 N.Y.S.2d 178, 179 (1991) (concluding marketability discount should have been applied, but not specifying discount percentage). Courts have approved discounts ranging from ten percent, *see Erp*, 976 So.2d at 1239–40 (best way to address appropriateness of marketability discount is through testimony of valuation experts), to thirty-five percent, *see Marriage of Tofte*, 134 Or.App. at 455, 459, 895 P.2d at 1391, 1393 (marketability discount could have accounted for impaired marketability of minority shares or fact that shares were in family corporation), depending on the circumstances. Nevertheless, trial courts should make a clear record as to the reason for applying a given discount rate to facilitate review on appeal.

### C. Maintenance

In section II, below, we address and reject as moot wife's argument that the trial court erred in extinguishing husband's arrearages in payment of temporary maintenance.

### D. Attorney Fees

Wife requests attorney fees incurred on appeal under section 14–10–119, C.R.S.2007. Because the trial court is in a better position than the appellate court to determine issues of fact regarding the current financial resources of the parties, we remand this issue to the trial court for determination. *See* C.A.R. 39.5; *In re Marriage of Yates,* 148 P.3d 304, 318 (Colo.App.2006).

### II. Husband's Cross–Appeal

Husband cross-appeals from the temporary orders entered by the magistrate and from the order of the district court adopting those orders on review pursuant to C.R.M. 7(a)(10). Because the court made unclear and conflicting findings as to wife's entitlement to maintenance, we reverse the award of temporary maintenance.

The district court's order on review of a magistrate's decision awarding temporary maintenance under C.R.M. 7 is appealable under subsection (11) of that rule. An award of temporary maintenance is within the sound discretion of the trial court and will not be disturbed on review absent an abuse of discretion. *See In re Marriage of Rose,* 134 P.3d 559, 561 (Colo.App.2006). We will not disturb the trial court's factual findings on temporary maintenance unless clearly erroneous and not supported by the record. *Id.*

Section 14–10–114(3), C.R.S.2007, governs the award of temporary maintenance where, as here, the parties' combined annual gross income exceeds $75,000. The court may award temporary maintenance under the statute only if it finds, as a threshold matter, that the spouse seeking maintenance (1) lacks sufficient property, including marital property, to provide for his or her reasonable needs, *and* (2) is unable to support himself or herself through appropriate employment. *See Rose,* 134 P.3d at 561; *In re Marriage of*

*Renier,* 854 P.2d 1382, 1385 (Colo.App.1993). Unless this test is met, the spouse is not entitled to maintenance.

Here, the trial court adopted the magistrate's findings that wife was entitled to temporary maintenance. However, those findings were contradictory. The magistrate initially found that wife was *not* able to meet her reasonable needs, but later found that she was. The magistrate also found that wife was appropriately employed and was not unable to support herself through that employment. In addition, the magistrate appeared to award maintenance in part to allow wife to maintain her lifestyle. However, maintenance of the parties' lifestyle is relevant only to the amount of any award, and may not be considered until the threshold test for entitlement to maintenance has been met. § 14–10–114(3); *In re Marriage of Renier,* 854 P.2d at 1385. For these reasons, the award must be reversed.

As a result of this conclusion, we need not address husband's further arguments with regard to the amount of maintenance. This conclusion also renders moot wife's contention that the court erred in not requiring husband to pay the arrearage of maintenance payments.

We uphold the trial court's ruling that it had discretion to apply a marketability discount to the valuation of a closely held business. However, we reverse the trial court's judgment entering permanent orders adopting the parties' separation agreement, as well as the order for temporary maintenance, and remand for a new hearing to determine the issues of property division, maintenance, and wife's request for attorney fees, as provided herein.

Judge ROTHENBERG and Judge HAWTHORNE concur.