ALTENBERND, Judge.
 

 Denise C. Sharon appeals and her former husband, C. William Sharon, cross-appeals an “Order on Issues on Remand” issued by the trial court as a result of our earlier decision in
 
 Sharon v. Sharon,
 
 862 So.2d 789 (Fla. 2d DCA 2003). This case is a disturbing example of dissolution litigation that has proceeded with little consideration to the need for timely and cost-effective resolution of family disputes. Unfortunately, we must reverse this order, recognizing that the parties and their attorneys on remand are likely to continue to spend far more on attorney’s fees than the issues in dispute warrant.
 

 This couple married in 1978 and separated in 1997 after nineteen years of marriage. At the time they separated, they had two teenage children who are now adults. Mr. Sharon filed for divorce in 2000 and the trial court entered a first amended final judgment of dissolution in July 2002. Prior to the divorce, the couple had lived a very comfortable lifestyle and Mr. Sharon had regularly earned in excess of $200,000 per year during the 1990s. The couple had no significant debt. As a result, the judgment of dissolution divided the family assets equally, providing $955,000 in assets to each party. It awarded Ms. Sharon permanent, periodic alimony of $3550 per month plus three years of rehabilitative alimony at $1250 per month.
 

 Both parties appealed this final judgment. In late 2003, this court issued an opinion that reversed the judgment in part and remanded for further proceedings.
 
 Sharon,
 
 862 So.2d at 792. We attempted to pinpoint the problems in the final judgment so that the parties could readily resolve the issues on remand. This court held that: 1) the rehabilitative alimony needed to be increased to cover the cost of proposed training as established by the existing record, 2) the trial court needed to consider the tax consequences created by the award of alimony based on the evidence in the record and also such additional evidence as may be necessary, 3) the equitable distribution needed to be adjusted to give Ms. Sharon an additional $6250, and 4) the trial court needed to make findings concerning the income that Ms. Sharon could reasonably be expected to receive from her liquid assets and then adjust the permanent alimony to reflect these findings.
 
 Id.
 
 at 791-92.
 

 When the case was remanded to the trial court, the evidence in the record reflected that the costs of training that needed to be added to the rehabilitative alimony were $1624.80. Most of the evidence was already in the record concerning the tax consequences and income from liquid assets, so it would seem that attorneys attempting to maximize their clients’ assets could have resolved the remaining issues with the help of a certified public accountant and maybe a mediator over the course of an afternoon. Perhaps by mid-February 2004, the parties would have been able to submit a stipulated revised final judgment to the trial court for entry.
 

 Instead, for reasons that are not entirely clear from our record, the parties did not return to the trial court to resolve these narrow issues on remand for more than four years.
 
 [1]
 
 The judge in the division was
 
 *964
 
 no longer the judge who had tried the initial trial. The trial court conducted hearings on January 22, 2008, and March 7, 2008, issuing a lengthy “Order on Issues on Remand,” in June 2008.
 

 As to the four matters that this court had remanded to the trial court in 2008, the court correctly provided a $1624.80 increase in rehabilitative alimony. The trial court claimed that it considered the testimony regarding the tax consequences of the award and the testimony showed that no change in the award of alimony was warranted. It gave Ms. Sharon an increase in equitable distribution of $6250, but refused to give her any interest on this money for the six years that Mr. Sharon had possessed these funds after entry of the judgment of dissolution. It found that Ms. Sharon could be expected to earn about $17,350 per year on her liquid assets that were not retirement accounts. It found that Mr. Sharon would earn almost $31,000 on similar accounts, and that each of them would earn a little more than $30,000 in retirement accounts, but that these amounts should not be considered as annual income available to pay current expenses. Based on these calculations and considering the taxes that Ms. Sharon would pay on this income, the trial court reduced her permanent alimony to $2940.
 

 The trial court then calculated that Mr. Sharon was entitled to a credit of $42,090 for his overpayment of alimony. Subtracting the amounts owed for rehabilitative alimony and the equitable distribution adjustment, the trial court determined that Ms. Sharon owed Mr. Sharon $34,575.20.
 

 Next, the trial court considered Ms. Sharon’s request for “temporary” attorneys’ fees for the proceedings in the trial court on remand. The court had never awarded an earlier award of temporary fees, so this award would appear to be the final award of fees at the conclusion of the trial on remand. Ms. Sharon’s attorney requested $51,425.65 for the work on these four narrow issues on remand. There is little question that the trial court regarded this request as exorbitant. After pages of discussion in its order, the trial court determined that Mr. Sharon owed Ms. Sharon $34,575.20 — a number that coincidentally left each party owing the other nothing. It seems rather clear that the trial judge was encouraging these parties to simply pack up their tents and go home. Instead, they came to this court.
 

 We affirm without further discussion the trial court’s determinations as to rehabilitative alimony and the adjustment to permanent alimony caused by the trial court’s consideration of the income Ms. Sharon received on her liquid assets. We also affirm the trial court’s decision to deny interest on the $6250 adjustment to equitable distribution. We reverse its decision on the tax effects of the alimony and remand for further consideration, and we reverse the award of temporary attorneys’ fees.
 

 As explained in our opinion in 2003, the $6250 error in equitable distribution was essentially a mathematical oversight by the trial judge in the judgment of dissolution that was rendered in July 2002.
 
 Sharon,
 
 862 So.2d at 792. The parties apparently complied with the equitable distribution in that judgment. Thus, at all times since July 2002 until the entry of the order on remand, Mr. Sharon had use of the $6250 and the ability to earn interest on that amount. This court has not expressly decided the extent to which a trial
 
 *965
 
 judge in a dissolution proceeding has discretion to deny an award of interest in a situation like this.
 
 See Erp v. Erp,
 
 976 So.2d 1234 (Fla. 2d DCA 2008).
 

 In isolation, the decision to deny interest on this adjustment seems questionable. On the other hand, the trial court was bothered by the fact that the parties had made these issues far more difficult to decide by delaying their resolution for over four years. The trial court did not award interest on the $6250, but it also did not adjust the $42,090 overpayment of alimony to account for interest. It is obvious that the net effect of these combined decisions actually favors Ms. Sharon. Although we might have expected the trial court to award interest if the matter had returned to it in the winter of 2004, we cannot conclude that the trial court abused its discretion by declining to calculate interest on the various adjustments required on remand in this case.
 

 As to the tax consequences of the award of alimony, in our prior opinion we mandated that the trial court consider the tax consequences on remand and that it should, if necessary, obtain additional evidence on this topic.
 
 Sharon,
 
 862 So.2d at 791. The trial court’s order contains no findings or any significant legal discussion of the tax implications of the award of alimony. Indeed, the order reflects that the trial court believed it was obligated only to consider the tax implications of the income derived from the liquid assets that the parties received in equitable distribution.
 

 Even with the adjustments contained in the order on remand, Ms. Sharon is receiving, and Mr. Sharon is paying, approximately $36,000 each year in alimony. In the absence of any findings, we assume that this alimony is deductible by Mr. Sharon and taxable to Ms. Sharon. When the alimony was set in 2002, the trial court used a relatively conservative list of expenses to determine Ms. Sharon’s needs. That list did not include federal income tax on the award of alimony. We do not rule out the possibility that the trial court could decline to adjust the alimony to account for the effects of taxation, but the order on remand contains no reasoned decision on this subject and appears to have addressed the wrong issue of taxation. Accordingly, we reverse this portion of the order on remand, and once again return the issue to the trial court to make the same determination that we mandated in 2003.
 

 Finally, the trial court’s award of $34,575.20 as temporary attorneys’ fees, although undoubtedly well intended, simply was not established in accordance with the applicable law.
 
 See, e.g., Heysek v. Heysek,
 
 997 So.2d 489 (Fla. 2d DCA 2008) (holding trial court erred in failing to make factual findings regarding reasonable hourly rate, number of hours reasonably expended, and the husband’s ability to pay). We reverse this award. Given the posture of this case, we suggest that the trial court simply make a traditional final determination of attorneys’ fees on remand.
 

 Over the last seven years, these parties appear to have spent at least $75,000 in attorneys’ fees to achieve an adjustment between them that appears to total about $40,000. The tax implication issue that we return to the trial court could be financially significant, but we are convinced that a certified public account could provide an accurate adjustment to account for tax implications with only a few hours’ work. By separate order, we are authorizing the trial court to determine an award of attorneys’ fees for Ms. Sharon on remand, but the trial court should carefully consider all
 
 *966
 
 of the Rosen
 
 [2]
 
 factors. As we did at oral argument in this case, we again encourage the parties to mediate this matter before a competent, experienced family law mediator because the litigation is obviously draining their assets and their emotions without providing a significant benefit for either side.
 

 Affirmed in part, reversed in part, and remanded.
 

 KELLY, J., and FULMER, CAROLYN K, Senior Judge, Concur.
 

 [1]
 

 . While it should not have delayed these proceedings, we note that the parties engaged in extensive appellate litigation over Ms. Sharon's right to receive attorneys’ fees for the trial work because her attorney did not file a motion for attorneys' fees within the thirty-day window that this court applied prior to the supreme court's decision in
 
 Montello v.
 
 
 *964
 

 Montello,
 
 961 So.2d 257 (Fla.2007).
 
 See Sharon v. Sharon,
 
 915 So.2d 630 (Fla. 2d DCA 2005),
 
 rev’d,
 
 974 So.2d 358 (Fla.2008),
 
 aff'd on remand,
 
 978 So.2d 172 (Fla. 2d DCA 2008) (table decision).
 

 [2]
 

 .
 
 Rosen v. Rosen,
 
 696 So.2d 697, 700 (Fla.1997).