In re the MARRIAGE OF Antoinette F. THORNHILL, Petitioner

and

Chuck Thornhill, Respondent.

No. 08SC777.

Supreme Court of Colorado, En Banc.

June 1, 2010.

Griff, Larson, Laiche, Brennan & Wright, Harry Griff, Grand Junction, Colorado, Attorneys for Petitioner.

Vicki A. Alsin, P.C., Vicki A. Alsin, Grand Junction, Colorado, Attorneys for Respondent.

Justice EID delivered the Opinion of the Court.

The parties in this case, Antoinette F. Thornhill ("Wife") and Chuck Thornhill ("Husband"), separated in September 2005 after twenty-seven years of marriage. The parties' standard of living increased significantly in the final years of the marriage, in large part due to Husband's formation of an oil and gas service company, NRG Services, LLC ("NRG"). The magistrate considered the parties' increased standard of living in finding that Wife was entitled to temporary maintenance. Later, the trial court adopted the magistrate's award as part of its permanent orders. Additionally, after hearing expert testimony on the appropriateness of a marketability discount, the trial court found enforceable a separation agreement between the parties that valued Husband's interest in NRG subject to a thirty-three percent marketability discount.

On appeal, the court of appeals reversed the trial court's award of temporary maintenance. *In re Marriage of Thornhill,* 200 P.3d 1083 (Colo.App.2008). The court noted that the magistrate's findings were unclear and confusing, and further held that the magistrate had improperly considered the parties' standard of living during the marriage when determining whether Wife had demonstrated that she was entitled to maintenance under section 14–10–114(3), C.R.S. (2009). After finding the separation agreement unconscionable, the court addressed and rejected Wife's argument that marketability discounts are never appropriate when valuing a closely held corporation in marriage dissolution proceedings. We granted certiorari to consider the court of appeals' conclusion with respect to marketability discounts and its reversal of temporary maintenance.[1]

As to the first issue, we hold that trial courts charged with the equitable distribution of marital property under section 14–10–113, C.R.S. (2009), may in their discretion apply marketability discounts when valuing an ownership interest in a closely held corporation. We conclude that the considerations we found compelling in *Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353 (Colo.2003), in which we held that marketability discounts are not appropriate in the minority shareholder context, are not applicable here. As to the second issue, we find that the court of appeals erred in concluding that the parties' standard of living could not be considered in the threshold entitlement determination for awards of temporary maintenance under section 14–10–114(3). Section 14–10–114(3) instructs that temporary maintenance may be awarded where the spouse lacks sufficient property "to provide for his or her reasonable needs" and "[i]s unable to support himself or herself through appropriate employment." § 14–10–114(3)(a)–(b). This threshold inquiry contemplates that the trial court will consider the particular circumstances surrounding the marriage, including the parties' standard of living. *See In re*

1. We do not consider the court of appeals' conclusion that the separation agreement was unconscionable. We granted certiorari on the following two issues:

(1) Whether the appellate court erred by refusing to extend the holding of *Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353 (Colo.2003), to divorce proceedings, thereby allowing the application of a marketability discount in valuing a closely held corporation operated as a going concern at the time of the parties' divorce proceeding.

(2) Whether the court of appeals erred by reversing the district court's ruling, which upheld the magistrate's temporary maintenance award to wife, when it failed to consider the particular facts and circumstances of the parties' marriage within section 14–10–113(3)'s threshold requirements of "reasonable needs" and "appropriate employment."

*Marriage of Olar,* 747 P.2d 676, 681 (Colo. 1987).

Accordingly, we affirm the court of appeals' holding that there is no per se rule against marketability discounts in the divorce context and hold that it is within the trial court's discretion to apply a marketability discount when valuing a spouse's ownership interest in a closely held corporation in a divorce proceeding. We reverse the court of appeals' holding that the magistrate improperly considered the parties' standard of living in making the threshold determination of entitlement to temporary maintenance under section 14–10–114(3).

## I.

During most of the parties' twenty-seven year marriage, Husband worked various jobs in the oil and natural gas industries while Wife worked part-time at miscellaneous low wage jobs and cared for the parties' three children. Wife returned to school in 1995 when the parties' youngest child was in middle school, ultimately earning a master's degree in occupational therapy. At the time of the permanent orders hearing, Wife was working in that field and earned a gross income of approximately $4,790.00 per month.

Husband's earnings increased significantly in the last few years of marriage after he formed his own oil and gas service company, NRG, in 2001. An expert retained by Husband valued his ownership interest in NRG at the time of the parties' separation to be $1.625 million after applying a thirty-three percent marketability discount. In addition, Husband indicated a total monthly income before expenses of approximately $15,000.

Husband and Wife entered into a separation agreement in February 2006 that was to govern the division of marital property, including the valuation of Husband's ownership interest in NRG. However, when Wife disavowed the agreement as unfair, the trial

judge vacated the "non-contested" hearing and scheduled a permanent orders hearing.

Prior to the permanent orders hearing, Wife requested temporary maintenance and the parties went before a magistrate for a temporary orders hearing in August 2006. Although the magistrate's findings and orders were somewhat unclear, with initial statements that Wife was "appropriately employed" but could not meet her needs independently followed by a later statement that she "works and meets her needs," the magistrate ultimately awarded Wife temporary maintenance of $12,000 per month until permanent orders, retroactive to May 2006 when Wife filed her motion requesting temporary orders.

At the permanent orders hearings in March and April of 2007, experts for both Wife and Husband provided valuations of Husband's ownership interest in NRG. Although the two experts' initial valuations were within $18,000 of each other, at approximately $2.5 million, significant disparity in the final valuations resulted from the application of a thirty-three percent marketability discount by Husband's expert. Wife's expert chose not to apply the marketability discount, citing the rationale of this court's decision in *Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353 (Colo.2003).

The trial court found the separation agreement—which used a valuation of Husband's interest in NRG that included the marketability discount—enforceable and entered it as an order of the court. The trial court also adopted the magistrate's order regarding temporary maintenance. The court of appeals reversed both of these rulings. *In re Marriage of Thornhill,* 200 P.3d 1083.

First, the court of appeals found the separation agreement to be unconscionable and unenforceable, and remanded the case with directions to vacate the property settlement and enter new permanent orders. Noting that the issue could arise on remand, *id.* at 1086,[2] the court of appeals went on to consid-

---

2. Later in the opinion, the court of appeals states that the trial court in this instance did not abuse its discretion in applying a marketability discount. *In re Marriage of Thornhill,* 200 P.3d at 1087. However, the record suggests that the

trial court never expressly ruled on the applicability of a marketability discount, but merely found the separation agreement, which used such a discount when determining the value of Husband's interest in NRG for purposes of divid-

er Wife's argument that the holding of *Pueblo* should be extended to marriage dissolution proceedings, thus prohibiting the application of marketability discounts in the valuation of an ownership interest in a closely held corporation in such proceedings. Citing the unique language and purpose of the statute at issue in *Pueblo* as well as the decisions of the majority of other courts that have looked at the issue, the court of appeals rejected an extension of this court's decision in *Pueblo*. Additionally, the court of appeals reversed the award of temporary maintenance on the ground that the magistrate's findings were unclear and conflicting with respect to whether Wife met the statutory requirements for maintenance, and because the magistrate improperly considered the parties' standard of living in the threshold test for maintenance. With respect to the issue of the parties' standard of living, the court of appeals noted that "maintenance of the parties' lifestyle is relevant only to the amount of any award, and may not be considered until the threshold test for entitlement to maintenance has been met." *In re Marriage of Thornhill*, 200 P.3d at 1088.

We granted certiorari to consider Wife's challenges to the court of appeals' ruling on marketability discounts and its reversal of the temporary maintenance award. We affirm the court's conclusion that a per se rule against marketability discounts in the divorce context is inappropriate. As the court of appeals properly concluded, trial courts have the discretion to apply such discounts when valuing an ownership interest in a closely held corporation in a divorce proceeding. We reverse the court of appeals' holding that the magistrate erred by considering the parties' standard of living in making the threshold determination of entitlement to temporary maintenance under section 14–10–114(3). Instead, we hold that this threshold inquiry contemplates that the trial court will consider the particular circumstances sur-

rounding the marriage, including the parties' standard of living. *See In re Marriage of Olar*, 747 P.2d at 681.

## II.

■ Wife argues that this court should extend the holding and rationale of *Pueblo*, which prohibits marketability discounts [3] in the context of a corporation buying out a dissenting minority shareholder, to situations involving the valuation of ownership interests in closely held corporations by a trial court charged with equitably dividing marital property in a marriage dissolution case. *See Pueblo*, 63 P.3d at 369. Because of the specific statutory language at issue in *Pueblo* and the discretion afforded to trial courts in marriage dissolution proceedings, we decline to adopt a per se rule against marketability discounts and instead hold that trial courts may, in their discretion, choose to apply such discounts when valuing an ownership interest in a closely held corporation in a divorce proceeding.

An extension of *Pueblo* to marriage dissolution cases is inappropriate given that *Pueblo* interpreted specific statutory language that is not present in the marriage dissolution statute. In *Pueblo*, we interpreted the statutory term "fair value" with respect to the value of a dissenter's shares. *Pueblo*, 63 P.3d at 358. We found it significant that the statute did not use the term "fair market value," under which a marketability discount would be appropriate. *Id.* at 361. We concluded that, had the legislature intended to adopt a "fair market value" standard for dissenter's shares, it would have done so, as it had used that standard in numerous other contexts. *Id.* at 362. We thus declined to interpret the statutory "fair value" language to include a marketability discount. *Id.* at 369.

ing the parties' assets, valid and enforceable. As such, we do not review for abuse of discretion a decision by the trial court to use a marketability discount, but rather review only the court of appeals' holding that trial courts have discretion to use marketability discounts when valuing ownership interests in closely held corporations in divorce proceedings.

3. A marketability discount "adjusts the value of specific shares to reflect the fact that there is no ready trading market for the shares." *Pueblo*, 63 P.3d at 357 n. 2.

Such "fair value" language is not present in the statute governing the distribution of property in the dissolution of a marriage. Instead, section 14–10–113(1) directs courts overseeing a divorce proceeding to divide marital property "in such proportions as the court deems just after considering all relevant factors." Although the dissolution statute contemplates the valuation of marital property in general terms,[4] it does not employ the specific "fair value" term interpreted by this court in *Pueblo*. Indeed, it contains no such words of limitation, instead giving trial courts broad discretion to divide marital property as they "deem[ ] just" after "considering all relevant factors." § 14–10–113(1). Because the language we are interpreting in this case does not contain the limiting language at issue in *Pueblo*, the holding of *Pueblo* cannot simply and readily be extended to valuations in dissolution proceedings.

Wife argues that despite the absence of the "fair value" language in the dissolution statutes, the rationale in *Pueblo* for prohibiting the application of a marketability discount in a shareholder dispute applies equally as well to a valuation within a divorce proceeding. In addition to concluding that the "fair value" language was inconsistent with a marketability discount, we noted in *Pueblo* that not permitting a marketability discount was most consistent with the basic purpose of the dissenters' rights statute—namely, to ensure that minority shareholders are properly compensated for the involuntary loss of their investment. *Pueblo*, 63 P.3d at 363–64. Wife claims that the non-member spouse in a divorce proceeding is similarly involuntarily cashed out of his or her investment and thus requires the same protection.

Even if the situation in this case can be similarly characterized as the involuntary cash-out of an ownership interest, it does not necessarily follow that there exists the same need in marriage dissolution proceedings for a per se rule prohibiting marketability discounts. *See Erp v. Erp*, 976 So.2d 1234, 1239 (Fla.Dist.Ct.App.2008) ("What is appropriate in the oppressed shareholder or minority ap-

praisal rights cases may not necessarily be desirable ... in an action for dissolution of marriage involving equitable distribution."). In *Pueblo*, we specifically noted that the underlying purpose of the dissenters' rights statute was to protect minority shareholders from oppressive conduct by majority shareholders. *Pueblo*, 63 P.3d at 363. The court found that marketability discounts, by introducing some uncertainty and speculation into appraisals, would work against this purpose by encouraging majority shareholders to engage in corporate squeeze-outs. *Id.* at 364. In contrast, there is no such similar imperative for a strong rule against marketability discounts to influence majority shareholder or corporate behavior in the marriage dissolution setting. Moreover, it is hard to characterize a non-member spouse as a potential victim of majority shareholder oppression; instead, the ownership interest, whether valued subject to or not subject to a marketability discount, is part of marital property being equitably divided by a trial court after consideration of all relevant factors.

Additionally, unlike in *Pueblo*, there is no clear national trend suggesting that a per se rule against marketability discounts is the majority view when it comes to valuing ownership interests in closely held corporations in divorce proceedings. *See Pueblo*, 63 P.3d at 364. If anything, the trend appears to go against such per se rules. Although Wife cites the case of *Brown v. Brown*, 348 N.J.Super. 466, 792 A.2d 463 (N.J.Super.Ct.App.Div.2002), wherein a New Jersey appellate court extended a rule prohibiting the use of marketability discounts in shareholder dispute cases to divorce proceedings, most courts have left the decision of the appropriateness of marketability discounts in valuations within marriage dissolution proceedings to the trial court's discretion. *E.g.*, *Erp*, 976 So.2d at 1239 ("[A] trial court should be accorded the discretion to determine whether a marketability discount should apply to the valuation of a closely held corporation in a dissolution of marriage case ...."); *see also Fausch v. Fausch*, 697 N.W.2d 748, 752–53 (S.D.2005) ("Whether or

---

4. *See* § 14–10–113(1)(b) (relevant factors include the value of the property set apart to each spouse); § 14–10–113(1)(d) (relevant factors in-

clude changes in value of separate property during the marriage); § 14–10–113(5) (directing that property be valued as of the date of decree).

not it is fair or appropriate to apply a discount in a divorce case where no immediate sale is contemplated is for the trial court to determine based upon the evidence of the case."); *Matter of Marriage of Tofte,* 134 Or.App. 449, 895 P.2d 1387, 1392 n. 5 (Ore. App.1995) ("We ... emphasize that valuation is a fact-based analysis necessarily taken on a case-by-case basis.").

We agree with these courts that the decision of whether to apply a marketability discount in the valuation of an ownership interest in a closely held corporation during divorce proceedings is best left to the discretion of the trial court. Whereas in *Pueblo,* we rejected a case-by-case approach to "fair value" appraisals in shareholder disputes as "untenable," here, we find it to be precisely the approach that is contemplated by the language of the marriage dissolution statute. In *Pueblo,* we noted that a case-by-case approach would introduce too much uncertainty and thus work against the purpose of the dissenters' right statute of providing incentives against and a remedy for the unfair treatment of a minority shareholder by the majority shareholders. *Pueblo,* 63 P.3d at 361. In contrast, the language of the marriage dissolution statute suggests that a case-by-case approach is most appropriate. As noted above, the trial court's discretion in the division of marital property is apparent in the dissolution statute's language, which states that the court "shall divide the marital property ... in such proportions *as the court deems just* after considering *all relevant factors.*" § 14-10-113(1) (emphasis added). We have repeatedly recognized that, as reflected in the statutory language, the trial judge possesses broad discretion in determining this equitable division based upon the facts and circumstances of the particular case. *In re Marriage of Wells,* 850 P.2d 694, 697–98 (Colo.1993); *In re Marriage of Mann,* 655 P.2d 814, 816 (Colo.1982); *see also In re Marriage of Graham,* 194 Colo. 429, 431, 574 P.2d 75, 76 (1978) ("The purpose of the division of marital property is to allocate to each spouse what equitably belongs to him or her. The division is committed to the sound discretion of the trial court and there is no rigid mathematical formula that the

court must adhere to." (citations omitted)). Because the dissolution statute advocates a case-by-case approach, it would be improper to impose a per se rule prohibiting marketability discounts in dissolution proceedings. Instead, the approach that is more in line with the trial court's broad discretion in determining the equitable division of marital property in such proceedings is to allow such courts the discretion to determine whether to apply a marketability discount based upon the facts and circumstances of the parties and marriage in a particular case.

For the foregoing reasons, we decline to adopt the per se rule against marketability discounts advocated by Wife. Instead, we hold that trial courts may, in their discretion, choose to apply a marketability discount when valuing a spouse's ownership interest in a closely held corporation in a marriage dissolution proceeding.

### III.

■ Wife also argues that the court of appeals erred in overturning the trial court's order upholding the magistrate's decision to award her temporary maintenance. The court of appeals provided two distinct reasons for such a reversal: first, the magistrate made findings that were contradictory, and second, the magistrate appeared to have considered the parties' standard of living when determining whether Wife met the statutory threshold for temporary maintenance. *In re Marriage of Thornhill,* 200 P.3d at 1088. With respect to the second reason, the court of appeals specifically stated that "maintenance of the parties' lifestyle is relevant only to the amount of any award, and may not be considered until the threshold test for entitlement to maintenance has been met." *Id.* We find that the court of appeals erred in holding that a trial court cannot consider the parties' standard of living when determining whether the threshold test of entitlement to temporary maintenance has been met, and that, while the magistrate's findings could have been more clear on the issue, the magistrate engaged in the appropriate analysis in determining that Wife had met the threshold in this case.

Temporary spousal maintenance awards are governed by section 14–10–114(3). In 2001, this section was amended by the General Assembly to provide a presumptive formula for the determination of temporary maintenance where the combined annual gross income of the two parties is seventy-five thousand dollars or less. Ch. 151, Sec. 1, § 14–10–114(2), 2001 Colo. Sess. Laws 481–83. However, where the parties' combined annual gross income is more than seventy-five thousand dollars—as in this case—the same two-part analysis that formerly governed all awards of temporary maintenance remains in place. § 14–10–114(3), (4).

Under this two-part analysis, the trial court first evaluates a spouse's entitlement to maintenance by determining whether the spouse meets a two-pronged threshold test. This two-pronged test requires the court to find that the spouse:

(a) Lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and

(b) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 14–10–114(3). Under this test, a trial court making a threshold entitlement-to-maintenance determination must first consider what constitutes the "reasonable needs" of the spouse seeking maintenance, and then consider whether that spouse possesses sufficient property or can obtain "appropriate employment" to meet those needs. If the trial court determines that the spouse is entitled to maintenance, it then considers "all relevant factors," including, among other things, "[t]he standard of living established during marriage," in setting the appropriate amount of temporary maintenance. § 14–10–114(4); *see also In re Marriage of Olar*, 747 P.2d at 681.

The court of appeals held that the magistrate in this case erred in considering whether Wife could "maintain her lifestyle" as part of the threshold entitlement determination, finding that such a consideration is only relevant to determining the amount of temporary maintenance to be awarded. *In re Marriage of Thornhill*, 200 P.3d at 1088. We disagree. The court of appeals appeared to base its conclusion on the fact that section 14–10–114(4) instructs trial courts to consider the parties' "standard of living during the marriage" when determining the amount of temporary maintenance to award. *See id.* ("[M]aintenance of the parties' lifestyle is relevant only to the amount of any award...."). But simply because the statute enumerates the "standard of living during the marriage" as a factor to be considered, among others, in setting the amount of temporary maintenance does not suggest that it is an improper consideration in performing the threshold inquiry of entitlement to maintenance. On the contrary, subsection (3)—through the use of broad language such as "reasonable" and "appropriate"—allows the court to consider what is "reasonable" and "appropriate" based on the circumstances of a particular case.

Our decision in *In re Marriage of Olar* is instructive here. In that case, the trial court denied maintenance on the ground that "reasonable needs" and "unable to support [oneself] through appropriate employment" was "a high threshold requiring a spouse to establish that he or she lacks the minimum resources to sustain human life." *In re Marriage of Olar*, 747 P.2d at 681. We disagreed with that interpretation, instead holding that the words "reasonable" and "appropriate" are tied to the particular circumstances surrounding the parties' marriage. We noted that the determination of "reasonable needs" is "dependent upon the particular facts and circumstances of the parties' marriage." *Id.* Likewise, in assessing what constitutes "appropriate employment," the trial court must consider "the party's economic circumstances and reasonable expectations established during the marriage." *Id. In re Marriage of Olar* establishes that the two-pronged threshold test looking to "reasonable needs" and "appropriate employment" is to be assessed within the broader context of the particular facts and circumstances of the parties and their marriage. *See In re Marriage of Yates*, 148 P.3d 304, 313 (Colo.App.2006).

The court of appeals was therefore incorrect in asserting that the trial court could not consider the recent increase in the parties' standard of living until after this threshold test of entitlement was met. To the contrary, the parties' standard of living during marriage is in fact an appropriate—and even a necessary—starting point for the trial court's determination of a particular spouse's reasonable needs or whether a spouse would be able to support herself through appropriate employment. *See In re Marriage of Huff*, 834 P.2d 244, 252 (Colo.1992) ("A review of the financial information in the record and *the parties' standard of living* at the time of the decree supports this finding [that wife lacks sufficient property to provide for her reasonable needs] and provides no basis to overturn the district court's ruling." (emphasis added)); *In re Marriage of Yates*, 148 P.3d at 313 (noting that the "determination of a spouse's reasonable needs is dependent on the particular facts and circumstances of the marriage").

The court of appeals was correct, however, in its observation that the magistrate's findings seem contradictory on the threshold issue. For example, at first the magistrate concluded that Wife "works and meets her needs," but later concluded that she did not, and issued a temporary maintenance award in the amount of $12,000 per month. When read in context, however, the magistrate's initial statement that Wife was appropriately employed appears to refer to the fact that her current employment was appropriate in the sense that it was commensurate with her level of education and experience. However, later it is clear that the magistrate determined that Wife would not be able to support herself given the standard of living that she experienced during the marriage, despite her current employment. We therefore find that the magistrate properly considered the parties' standard of living during the marriage when it found that Wife was entitled to an award of temporary maintenance, and reverse the court of appeals' determination to the contrary. We express no opinion on the issues the court of appeals did not reach, including Husband's challenge to the amount of the award, and Wife's claim that Husband should have been required to pay the arrearage of maintenance payments. *In re Marriage of Thornhill*, 200 P.3d at 1088.

## IV.

We affirm the court of appeals' holding that there is no per se rule against marketability discounts in the divorce context and hold that it is within the trial court's discretion to apply a marketability discount when valuing a spouse's ownership interest in a closely held corporation in a divorce proceeding. We reverse the court of appeals' holding that the magistrate improperly considered the parties' standard of living in making the threshold determination of entitlement to temporary maintenance under section 14–10–114(3). Accordingly, we remand this case for further proceedings consistent with this opinion.